1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO (NORTHERN DIVISION)

| | |
|---|---|
| CODY J. SCHUELER, an individual, | |
| Plaintiff, | Case No. |
| v. | |
| FOUR SQUAREBIZ, LLC, a Wyoming limited liability company, KEITH O. CREWS, an individual and the associated marital community, MICAH EIGLER, an individual and the associated marital community, and JOHN AND JANE DOES 1-10, | **COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

COMES NOW, Plaintiff CODY J. SCHUELER, by and through his attorney, Andrew M. Wagley of Etter, McMahon, Lamberson, Van Wert & Oreskovich, P.C., and hereby alleges as follows:

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

# I.   PARTIES

1.1. Plaintiff Cody J. Schueler is an individual residing in Kootenai County, Idaho.  As indicated below, Mr. Schueler is the Lender under the Bitcoin Loan Agreements and Personal Guarantees at issue herein.

1.2. Upon information and belief, Defendant Four SquareBiz, LLC ("Four SquareBiz") is a Wyoming limited liability company with a principal place of business in Atlanta, Georgia.   As indicated below, Four SquareBiz is the Borrower under the Bitcoin Loan Agreements at issue herein.

1.3. Upon information and belief, Defendant Keith O. Crews is a married individual residing in Kennesaw, Georgia.  As indicated below, Mr. Crews is the Borrower under the Bitcoin Loan Agreements and Borrower / Guarantor under the Personal Guarantees at issue herein.

1.4. Upon information and belief, Defendant Micah Eigler is a married individual residing in Encino, California.  As indicated below, Mr. Eigler is the Co-Signer under the Bitcoin Loan Agreements and the Co-Signer / Guarantor under the Personal Guarantees at issue herein.

1.5. Defendants John and Jane Does 1-10 are currently unknown individuals and/or entities that may be involved in the acts, omissions, and transactions detailed below.  Such individuals and/or entities include, but are not limited

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

to, co-conspirators, officers and directors of Four SquareBiz, LLC, and the spouses of Keith Crews and Micah Eigler.

## II.   JURISDICTION, VENUE, AND GOVERNING LAW

2.1.  Jurisdiction is proper in the United States District Court, District of Idaho (Northern Division) and over the Defendants herein, pursuant to 28 U.S.C. § 1332, I.C. § 5-514, I.C. § 5-515, and other applicable laws.  The Bitcoin Loan Agreements and Personal Guarantees at issue herein were entered into in the State of Idaho.

2.2.  Venue is appropriate in this Court pursuant to the forum selection clause of the Bitcoin Loan Agreements detailed below.   In particular, these Agreements provide that "[t]he venue for any lawsuit filed by either party related to the terms of this agreement shall be located exclusively in the federal courts of the state of Idaho, U.S.A."

2.3.  The Bitcoin Loan Agreements, along with the accompanying Personal Guarantees, are expressly governed by the laws of the State of Idaho.

## III.   FACTS

3.1.  This lawsuit is predicated upon the breach of three Bitcoin Loan Agreements executed by Defendants Four SquareBiz, LLC, Keith Crews,

Complaint—Page 3

and Micah Eigler.  Additionally, Mr. Crews and Mr. Eigler also executed Personal Guarantees for the Bitcoin Loan Agreements.

3.2. Defendants, jointly and severally, approached Mr. Schueler in early 2021 regarding the opportunity to invest in the funding and launch of "Dstem Coin," a purportedly new decentralized, blockchain cryptocurrency backed by the stem cell medical industry.  Mr. Schueler knew Mr. Crews and Mr. Eigler from previous business transactions.  Mr. Crews purported to be Chief Executive Officer (CEO) and Chairman of Four SquareBiz, LLC.

3.3. Throughout this timeframe and thereafter, Defendants presented Mr. Schueler with various documents regarding Dstem Coin and other cryptocurrencies.  These documents include but are not limited to, PowerPoint presentations of blockchain technology and cryptocurrency investments, industry "White Paper" and articles regarding Dstem Coin, a Four SquareBiz "Co-Venture Equity Agreement" for the funding and launch of Dstem Coin, and other various agreements, correspondence, and documents pertaining to Dstem Coin.

3.4. On or about March 27, 2021, Defendants entered into the first of three Bitcoin Loan Agreements with Mr. Schueler.  A true and correct copy of

ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

the first Bitcoin Loan Agreement (and attachments) is attached hereto as **Exhibit A** and incorporated by this reference as if restated verbatim herein.

3.5. The express purpose of the first Bitcoin Loan Agreement was for "Borrower to secure private equity funding through Trust Funds Capital, Ltd and serviced through https://bitrei.io" for the launch and funding of Dstem Coin. (**Exhibit A** at p. 1.) As part of the inducement to enter into the first Bitcoin Loan Agreement, Defendants presented Mr. Schueler with purported documentation from "Trust Funds Capital." Part of this documentation showed a "Digital Private Equity Funding" loan as part of the Dstem Coin funding process.

3.6. Upon information and belief, the associated documentation from "Trust Funds Capital" is false, fabricated, and fraudulent. In this vein, the telephone number, email address, and physical address contained therein are invalid, come back to different entities, or otherwise are not associated with a legitimate financial institution.

3.7. Under the first Bitcoin Loan Agreement, Four SquareBiz and Mr. Crews are the Borrower, Mr. Eigler is the Co-Signer, and Mr. Schueler is the Lender. In accordance with the execution of the Agreement, Mr. Schueler loaned five (5) Bitcoins. (*See* **Exhibit A**.) As repayment, Defendants

agreed to repay Mr. Schueler ten (10) Bitcoins and 41,443.973913024 Dstem Coins on or before 5:00 pm PST on April 6, 2021. (***Id.***)

3.8.  Payment pursuant to the first Bitcoin Loan Agreement was never received, resulting in a clear breach of contract.

3.9.  The second Bitcoin Loan Agreement entered by Mr. Schueler as Lender, Mr. Crews and Four SquareBiz as Borrower, and Mr. Eigler as Co-Signor was executed on or about April 26, 2021.  A true and correct copy of the second Bitcoin Loan Agreement is attached hereto as **Exhibit B** and incorporated by this reference as if restated verbatim herein.

3.10. The express purpose of the second Bitcoin Loan Agreement is "for the Borrower to pay for the Funds Transfer Clearance Code ('FTCC') to transfer two hundred thirty million dollars ($230,000,000.00)" associated with the funding and launch of Dstem Coin.  (**Exhibit B** at p. 1.)  As part of the inducement to enter into this Agreement, Defendants presented Mr. Schueler with purported documentation from "Trust Funds Private banking."  This documentation requested Mr. Crews "proceed to pay your Funds Transfer Clearance Code (FTCC) to complete your withdrawal" of $230,000,000 as part of the Dstem Coin funding process.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

3.11. Upon information and belief, the associated documentation from "Trust Funds Private banking" is false, fabricated, and fraudulent.  In this vein, the information associated with "Trust Funds Private banking" is invalid, comes back to different entities, or otherwise is not associated with a legitimate financial institution.

3.12. Under the second Bitcoin Loan Agreement, Mr. Schueler loaned three hundred sixty-three thousand dollars ($363,000.00) in Bitcoin in exchange for repayment of seven hundred twenty-six thousand dollars ($726,000.00) in Bitcoin and fifty thousand (50,000) Dstem Coins on or before 5:00 pm PST on April 30, 2021.  (*See* **Exhibit B**.)

3.13. Payment pursuant to the second Bitcoin Loan Agreement was never received, resulting in a breach of contract.

3.14. The third Bitcoin Loan Agreement entered by Mr. Schueler as Lender, Mr. Crews and Four SquareBiz as Borrower, and Mr. Eigler as Co-Signor was executed on or about April 29, 2021.  A true and correct copy of the third Bitcoin Loan Agreement is attached hereto as **Exhibit C** and incorporated by this reference as if restated verbatim herein.

3.15. The express purpose of the third Bitcoin Loan Agreement was for "the Borrower to pay for HMRC Tax Clearance Pin ('TCP') to pay taxes on the

ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

transfer of Borrower's loan fund of two hundred million thirty dollars ($230,000,000.00)" associated with the funding of Dstem Coin.  (**Exhibit C** at p. 1.)  As part of the inducement to enter into this Agreement, Defendants presented Mr. Schueler with purported documentation of a "FTCC payment request from TrustFunds Private Bank."

3.16. Upon information and belief, the associated documentation from "TrustFunds Private Bank" is false, fabricated, and fraudulent.  In this vein, the information associated with "TrustFunds Private Bank" is invalid, comes back to different entities, or otherwise is not associated with a legitimate financial institution.

3.17. Under the third Bitcoin Loan Agreement, Mr. Schueler loaned $296,100.00 in Bitcoin in exchange for repayment of $592,200.00 (to be paid in Bitcoin) on or before 5:00 pm PST on May 4, 2021.  (*See* **Exhibit C**.)

3.18. Payment pursuant to the third Bitcoin Loan Agreement was never received, resulting in a breach of contract.

3.19. The Bitcoin Loan Agreements all contain Personal Guarantees, whereby Mr. Crews and Mr. Eigler unconditionally and absolutely guaranteed for the benefit of Mr. Schueler that they would perform the provisions of the Agreements including, but not limited to, payment of all sums, charges,

ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

costs, and expenses payable.  By personally guaranteeing the repayment under unambiguous terms of the Agreements, Mr. Schueler is entitled to recover all sums due and owing pursuant to the Bitcoin Loan Agreements against Mr. Crews and Mr. Eigler individually.

3.20. Furthermore, the Bitcoin Loan Agreements provide that if Borrower and/or Co-Signer fail to perform as indicated therein, Defendants shall be automatically deemed in default with no required notice.  The Agreements also call for joint and several liability of Borrower and Co-Signer. Furthermore, the Agreements allow for the recovery of costs and attorneys' fees to the prevailing party of any litigation.

3.21. As a result of Defendants failure to repay Mr. Schueler per the Agreements, a significant outstanding balance and principal remains due and owing, along with accrued interested at the highest amount pursuant to Idaho law.

3.22. Prior to filing this lawsuit, Mr. Schueler made multiple, good faith attempts to negotiate a resolution of this matter with Defendants and repayment of the funds loaned under the three Bitcoin Loan Agreements.  Such attempts were unsuccessful and to no avail.

3.23. Defendants have continually promised repayment to Mr. Schueler, but have indicated delays associated with other projects.  Further, Defendants have

ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

indicated a substantial Cashier's Check payable to Mr. Crews is available to compensate Mr. Schueler, but have failed to provide such funds. Although Defendants have sent Mr. Schueler a picture of said Cashier's Check, this documentation is believed to be fabricated.

3.24. Upon information and belief, "Trust Funds Private Banking," "Trust Funds Private Bank," and/or "Trust Funds Capital" are not legitimate financial institutions.   None of these names are listed with the Office of the Comptroller of the Currency, Federal Deposit Insurance Corporation (FDIC), Federal Reserve National Information Center, or any pertinent Secretary of State business entity searches.

3.25. Upon information and belief, Dstem Coin is not a legitimate cryptocurrency investment.   All of the information and documentation regarding Dstem Coin was created, fabricated, and falsified by Defendants to defraud potential investors.

3.26. Based upon Defendants' breach of said Agreements and fraudulent conduct, Mr. Schueler has suffered, and will continue to suffer, substantial economic damages in the form of millions of dollars, to include loss of funds loaned to Defendants, adverse tax consequences, loss of business opportunities, and attorneys' fees and costs to obtain recovery.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## IV.   FIRST CAUSE OF ACTION
### BREACH OF CONTRACT—
### ALL DEFENDANTS

4.1   Plaintiff incorporates the allegations set forth in the prior and preceding paragraphs as though fully restated herein.

4.2   To establish breach of contract, the plaintiff must prove the following under Idaho law: (a) existence of the contract, (b) breach of the contract, (c) that the breach caused damages, and (d) amount of those damages.

4.3   The three Bitcoin Loan Agreements by and between Plaintiff and Defendants constituted valid contracts under the laws of the State of Idaho.

4.4   A breach of contract is non-performance of any contractual duty, absent legal justification, at the time performance is required.  Defendants failed to repay Plaintiff and perform other duties in accordance with the Agreements, without legal excuse, constituting a clear breach of contract.

4.5   At all times material to the Agreements, Plaintiff performed all of his requisite contractual duties and has satisfied all conditions precedent.

4.6   As a result of the Defendants' breach of said Agreements, Plaintiff has suffered damages in an amount to be proven fully at the time of trial, including but not limited to, the principal amounts legally due under the terms of said Agreements, plus reasonable interest and attorneys' fees.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

## V.    SECOND CAUSE OF ACTION
## BREACH OF PERSONAL GUARANTEES—
## DEFENDANTS CREWS AND EIGLER

5.1    Plaintiff incorporates the allegations set forth in the prior and preceding paragraphs as though fully restated herein.

5.2    Pursuant to Idaho law, a "guaranty" is an undertaking or promise on the part of a guarantor, collateral to a primary or principal obligation, which binds the guarantor to performance in the event of nonperformance of the principal to the primary obligation.  A personal guaranty is interpreted and enforced as any other type of contract.

5.3    Defendants Crews and Eigler entered into Personal Guarantees with Plaintiff, wherein they contractually agreed and warranted to perform the duties, obligations, and make payments in the event of nonperformance of Defendants under the three Bitcoin Loan Agreements.   These Personal Guarantees are valid contracts under Idaho law.

5.4    Defendants Crews and Eigler breached these Personal Guarantees by failing to pay Plaintiff and perform other duties in accordance with the Personal Guarantees, without legal excuse, when performance was due.

5.5    At all times material to the Personal Guarantees, Plaintiff performed all of his requisite contractual duties and has satisfied all conditions precedent.

Complaint—Page 12

5.6  As a result of the Defendants' breach of said Personal Guarantees, Plaintiff has suffered damages in an amount to be proven fully at the time of trial, including but not limited to, the economic amounts legally due under the terms of said Agreements, plus attorneys' fees and costs.

## VI.  THIRD CAUSE OF ACTION
### BREACH OF GOOD FAITH AND FAIR DEALING—
### ALL DEFENDANTS

6.1.  Plaintiff incorporates the allegations set forth in the prior and preceding paragraphs as though fully restated herein.

6.2.  Idaho law recognizes a cause of action for breach of an implied covenant of good faith and fair dealing.  This covenant requires that the parties perform in good faith the obligations imposed by their agreement(s).  A violation of the covenant occurs when a party violates, nullifies, or significantly impairs any benefit of the contract.

6.3.  As indicated herein, the parties entered into valid contracts in the form of the three Bitcoin Loan Agreements.  These Agreements contain an implied covenant of good faith and fair dealing.

6.4.  Defendants breached not only the express terms of these Agreements, but also the implied covenant of good faith and fair dealing by virtue of delaying performance, falsely promising to provide Plaintiff with payment,

Complaint—Page 13

continually negotiating a resolution in bad faith, and other facts as will be established fully at the time of trial.

6.5. As a direct and proximate result of the Defendants' breach of the implied duty of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven fully at the time of trial.

## VII.   FOURTH CAUSE OF ACTION
## CONVERSION—ALL DEFENDANTS

7.1. Plaintiff incorporates the allegations set forth in the prior and preceding paragraphs as though fully restated herein.

7.2. Under Idaho law, conversion is any distinct act of dominion wrongfully exerted over another's property inconsistent with the proper owner's rights, therein depriving him or her of possession.

7.3. As indicated above, Defendants have wrongfully asserted dominion and control over the property of Plaintiff, to wit the funds loaned by Plaintiff to Defendants under the three Bitcoin Loan Agreement.

7.4. As indicated above, Plaintiff has demanded return of the funds loaned to the Defendants, to no avail.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

7.5. As a direct and proximate result of Defendants' wrongful conversion, Plaintiff has suffered damages in an amount to be proven fully at the time of trial, including the principal loaned under the Agreements.

## VIII.   FIFTH CAUSE OF ACTION
## FRAUD—ALL DEFENDANTS

8.1. Plaintiff incorporates the allegations set forth in the prior and preceding paragraphs as though fully restated herein.

8.2. Under Idaho law, the elements of fraud are: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.

8.3. As indicated herein, Defendants made multiple false statements or representations pertaining to the inducement of the Bitcoin Loan Agreement and Personal Guarantees.  These false representations include, but are not limited to, the viability of the Dstem Coin investment, the purpose(s) of the Bitcoin Loan Agreements, the existence of issues with "Trust Funds Private Bank," and Defendants intent to repay the principal amounts loaned under the Agreements.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

8.4.  Such false statements, representations, and/or omissions were material as they formed the basis, consideration, and purpose for Mr. Schueler to enter into the three Bitcoin Loan Agreements, loan funds thereunder, and transfer Bitcoin to Defendants.

8.5.  At all times material hereto, Defendants were aware of the falsity of such statements, representations, and/or omissions based upon their creation of the fraudulent Dstem Coin scheme that resulted in the Agreements. Defendants intended that Mr. Schueler rely upon such misrepresentations to transfer Bitcoin funds to Defendants.

8.6.  Plaintiff was ignorant in the falsity of the statements, representations, and/or omissions herein.  Plaintiff justifiably relied upon the same in order to enter into the three Bitcoin Loan Agreements, Personal Guarantees, and associated business transactions with Defendants.

8.7.  As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff has suffered damages in an amount to be proven fully at the time of trial, including the principal loaned under the Agreements.

//

//

//

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## IX.   SIXTH CAUSE OF ACTION
## CIVIL CONSPIRACY—ALL DEFENDANTS

9.1.  Plaintiff incorporates the allegations set forth in the prior and preceding paragraphs as though fully restated herein.

9.2.  Under Idaho law, a civil conspiracy is actionable if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner.

9.3.  As indicated herein, Defendants entered into an agreement / conspiracy to cause Plaintiff to loan substantial funds under the three Bitcoin Loan Agreements and associated Personal Guarantees.

9.4.  The purpose of the conspiracy was to accomplish an unlawful objective, to wit to defraud, steal, and wrongfully convert said funds from Plaintiff.

9.5.  In addition thereto and in the alternative, the conspiracy was accomplished in an unlawful manner, to wit Defendants executed said Agreements with no actual intent to ever repay Plaintiff the principal thereof and other acts as alleged herein.

9.6.  As a direct and proximate result of Defendants' civil conspiracy, Plaintiff has suffered damages in an amount to be proven fully at the time of trial, including the principal loaned under the Agreements.

Complaint—Page 17

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## X.   RESERVATION OF RIGHTS

By virtue of pleading the above claims and causes of action, Plaintiff Cody J. Schueler in no way waives the right to amend this Complaint and add other, further, and additional claims and causes of action to the fullest extent allowed by law and equity.  Such claims, causes of action, and/or theories of recovery include, but are not limited to, punitive damages pursuant to I.C. § 6-1604(2) and piercing the corporate veil of Four SquareBiz, LLC.

## XI.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b)(1), District Local Rule Civil 38.1, and the Seventh Amendment to the Constitution, Plaintiff hereby demands a jury on any and all issues triable as a matter of right by a jury.

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cody J. Schueler, prays for judgment against Defendants, jointly and severally where applicable, as follows:

1.   Any and all damages, including economic damages and the principal loaned, which will reasonably and fairly compensate Plaintiff;

2.   Attorneys' fees and costs of suit, as allowed by the terms of the Agreements, I.C. § 12-120(3), and other applicable laws;

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1
2
3.      Pre-judgment and post-judgment interest at the highest rate permitted

by law; and

4.      Such other and further relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED this 12th day of September, 2022.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.


By:   /s/ Andrew M. Wagley
     Andrew M. Wagley, ISB #10277
     Attorney for Plaintiff

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

# EXHIBIT A

## BITCOIN LOAN AGREEMENT

THIS BITCOIN LOAN AGREEMENT (the "Agreement") is made this 27th day of March, 2021 (the "Effective Date") by and between Four SquareBiz, LLC, a Wyoming limited liability company with a registered address at 3350 Riverwood Pkwy Suite 1900, Atlanta GA 30339; Keith O. Crews, an individual residing at ███████████ Kennesaw GA 30152 (collectively, the "Borrower"); Micah Eigler, and individual residing at ███████████ Encino, CA 91316, (the "Co-signer"); and Cody J. Schueler, an individual with a mailing address at ███████████ ██, Coeur d'Alene, Idaho 83814 (the "Lender"). The Borrower, Co-Signor, and Lender may be referred to herein individually as "Party" or collectively as "Parties."

## RECITALS

WHEREAS, the Lender has agreed to loan the Borrower five (5) Bitcoins ("BTC") for the Borrower to secure private equity funding through Trust Funds Capital, Ltd. and serviced through https://bitrei.io (Attached hereto and Incorporated herein as "Exhibit A" are true and accurate copies of loan documentation supplied by the Borrower);

WHEREAS, in exchange for the Lender transferring BTC to the Borrower, the Borrower will repay the Lender: ten (10) BTC (including tax penalties incurred), DStem Coins, and an option to purchase Dstem Coins;

WHEREAS, to secure the Lender's interest in the BTC, the Borrower and the Co-signer agree to personally guaranty the BTC and all sums due and owing to the Lender;

WHEREAS, in consideration for Co-signer agreeing to secure the loan, Borrower agrees to compensate the Co-signer; and

WHEREAS, the Borrower and Co-signer shall be jointly and severally liable for all sums dues and owing to the Lender;

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, including without limitation, the mutual consent of the Parties hereto, the Borrower, Co-signer, and Lender the Parties, intending to be legally bound, hereby agree as follows:

1. Terms and Conditions.
    a. Lender's Performance. Upon dual execution of this Agreement, the Lender shall loan five (5) BTC to the Borrower. The Lender shall effectuate said loan by sending five (5) BTC directly to the Borrower's BTC wallet.

        i. The Borrower's BTC Wallet address is:

        ███████████████████████[1]

---

[1] The Borrower has indicated that the BTC Wallet address is subject to change. In the event that the wallet address changes, the Borrower shall promptly notify the Lender of the same.

b. Borrower's Performance. On or before 5:00 pm PST on Tuesday, April 6, 2021, the Borrower shall send the following to the Lender:
  i. Ten (10) BTC to the Lender's BTC Wallet

    1. The Lender's BTC Wallet address is:

    2. ███████████████████████████ ; and

  ii. To reimburse the Lender for the initial taxable event of converting Ethereum to BTC, the Borrower shall send the Lender 41,443.973913024 Dstem coins. It is understood and agreed that it is not yet certain which cryptocurrency wallet will be able to receive the Dstem Coins. Borrower expressly agrees to block and hold the Lender's Dstem Coins until such time as the Dstem Coin wallet is determined and is readily transferrable to the Lender's wallet.

  iii. The Lender shall also have the option to purchase an additional one hundred thousand (100,000) Dstem Coins at a valuation of two dollars and 50/100 ($2.50) per coin. Lender shall hold this exclusive right until such time as the Dstem Coin IEO. The Borrower shall provide the Lender with fourteen (14) days written notice of the Dstem Coin IEO.

c. Co-signer. The Co-signer acknowledges, has read, and understands the Agreement and agrees to accept full responsibility for the fulfillment of all the Terms and Conditions of the Agreement, including Section 1(b) and any other amounts due under this Agreement.

  i. The Co-signer shall remain responsible for the term of the Agreement.

  ii. In exchange for the Co-signer's agreement to sign on to this Agreement, Borrower shall send twenty-five thousand (25,000) Dstem Coins to the Co-signer. It is understood and agreed that it is not yet certain which cryptocurrency wallet will be able to receive the Dstem Coins. Borrower expressly agrees to block and hold the Co-signer's Dstem Coins until such time as the Dstem Coin wallet is determined and is readily transferrable to the Co-signer's wallet.

d. Guarantee.

  i. Concurrently with its execution and delivery of this Agreement, Borrower and Co-signer shall deliver to Lender a guarantee from Guarantor in substantially the form of Schedule 1 attached hereto and made a part hereof. The Borrower and Co-signer shall personally guarantee all monetary terms of this Agreement, including any and all penalties that may accrue. The Guaranty is attached hereto as Schedule 1.

2. Breach.
a. In the event the Borrower fails to perform under the terms of Section 1(b), the Borrower shall be automatically deemed in default.

b. Each day the Borrower remains in default, a twenty percent (20%) interest penalty shall accrue. Said penalty shall be payable in BTC or as otherwise stipulated to by the Lender.

3. Representations and Warranties. The Borrower warrants and represents to the Lender on the date hereof that this Agreement has been duly and validly authorized, executed and delivered on behalf of the Borrower and constitutes the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with its terms. The Borrower further warrants and represents that all funds are lien-free and of non-criminal and non-terrorist origin.

4. Remedies. Upon the occurrence and during the continuation of any Event of Default, the Lender may, at its option, (a) declare any outstanding sums hereunder immediately due and payable and/or (b) exercise all other rights and remedies available to the Lender herein, under applicable law against both the Borrower and the Co-signer jointly and severally. The Lender shall have the right to rescind any acceleration in payment of the principal amounts due hereunder for default, as aforesaid, if the Lender so elects, in which event this Agreement shall be construed, interpreted and enforced in the same manner as if the Lender had never elected to declare the unpaid principal balance hereof at once due and payable.

5. Rights and Remedies Cumulative. No delay or omission by the Lender in exercising any right or remedy herein shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies herein. All rights of the Lender stated herein are cumulative and in addition to all other rights provided by law.

6. Governing Law. This Agreement is governed by the laws of the State of Idaho, and any questions arising hereunder shall be construed or determined in accordance with such law. The venue for any lawsuit filed by either party related to the terms of this agreement shall be located exclusively in the federal courts of the state of Idaho, U.S.A.

7. Notices. Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by registered or certified mail (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a party may designate in accordance herewith), or telefacsimile, to the respective address set forth below:

Borrower:
Four SquareBiz, LLC
Name: Keith O. Crews, Chairman
Address: 3350 Riverwood Pkwy Suite 1900, Atlanta GA 30339
Phone : 423-284-7854
E-mail : okcrews@4squarebiz.com

Borrower
Name: Keith O. Crews, Individually
Address: ████████████████ Kennesaw GA 30152
Phone : 423-284-7854
E-mail : okcrews@yahoo.com

Lender:
Name: Cody J. Schueler
Address: ███████████ Coeur d'Alene, Idaho 83814, U.S.A.
Phone: +1-406-370-6178
E-mail: Cody@puremanagementsolutions.com

Co-signer:
Name: Micah Eigler
Address: ███████████ Encino, Ca 91316
Phone: 1-818-939-2057
E-mail: Eigler1@gmail.com

Any party may change its address by giving any other party written notice of its new address as herein provided.

8. Attorney Fees and Costs. If either Party commences legal proceedings to interpret or enforce the terms of this Agreement, the prevailing Party will be entitled to recover court costs and reasonable attorney fees.

9. Modifications. All modifications or amendments to this Agreement shall be effective only when reduced to writing and signed by both parties hereto.

10. Entire Agreement. This Agreement constitutes the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements.

11. Successors and Assigns. This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, that neither party may assign this Agreement or any rights or duties hereunder without the prior written consent of the other party (such consent to not be unreasonably withheld). Notwithstanding the foregoing, in the event of a change of control of Lender or Borrower, prior written consent shall not be required so such party provides the other party with written notice prior to the consummation of such change of control. For purposes of the foregoing, a "change of control" shall mean a transaction or series of related transactions in which a person or entity, or a group of affiliated (or otherwise related) persons or entities acquires from stockholders of the party shares representing more than fifty percent (50%) of the outstanding voting stock of the such party.

12. Severability of Provisions. Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

13. Counterpart Execution. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by telefacsimile, email or other electronic method of transmission shall be

equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by telefacsimile, email or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

14. Miscellaneous. Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders.

(The remainder of this page is intentionally blank. Signature page(s) to follow.)

IN WITNESS WHEREOF, each of the Parties hereto have executed this Agreement as of the date and year first written above.

LENDER                                          BORROWER:

Cody J. Schueler                                Four Squarebiz, LLC


By: _____         By: _____
    Cody J. Schueler, Individually               Keith O. Crews
                                                       Its: Chairman


                                                       BORROWER:

                                                       Keith O. Crews


                                                       By: _____
                                                            Keith O. Crews, Individually


                                                       CO-SIGNER:

                                                       Micah Eigler


                                                       By: _____
                                                            Micah Eigler, Individually

SCHEDULE 1

GUARANTEE

KEITH O. CREWS, a (Married) individual ("Borrower"), whose address is ███████████
██ Kennesaw GA 30152; and MICAH EIGLER, a married individual, whose address is ██
████████ Encino, CA 91316 ("Co-signer") (collectively "Guarantor") as material inducement
to and in consideration of CODY J. SCHUELER, an individual whose mailing address is ███
██████, Coeur d'Alene, Idaho 83814, U.S.A. ("Lender") entering into a BITCOIN LOAN
AGREEMENT ("Agreement"), dated as of March 27, 2021, pursuant to which Lender lent five
(5) Bitcoins to the Borrower, unconditionally and absolutely guarantees and promises, to and for
the benefit of Lender, its successors and assigns, that Guarantor shall perform the provisions of
the Agreement including, but not limited to, payment of all sums, charges, costs and expenses
payable by Borrower and Co-Signer, its successors and assigns, under the Agreement and the full
performance and observance of all of the covenants, terms, conditions and agreements therein
provided to be performed and observed by Borrower and Co-signer, as well as any successors and
assigns.

If Guarantor is more than one person, Guarantors' obligations are joint and several and are
independent of Party's obligations under the Agreement and shall not be discharged except by
payment to and receipt by Lender of all sums due under the Agreement. A separate action may be
brought or prosecuted against any Guarantor whether the action is brought or prosecuted against
any other Guarantor or Borrower, or all, or whether any other Guarantor or Borrower, or all, are
joined in the action.

Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability under this
Guarantee.

The provisions of the Agreement may be changed by agreement between Lender and Borrower,
or their respective successors or assigns, at any time, or by course of conduct, without the consent
of or without notice to Guarantor, including, without limitation, the obligations of Borrower, the
term of the Agreement or the time for performance of any obligation thereunder, or the re-
Agreement, compromise or settlement of any Agreement obligations. This Guarantee shall
guarantee the performance of the Agreement as changed. Assignment of the Agreement (as
permitted by the Agreement) shall not affect this Guarantee.

This Guarantee shall not be affected by Lender's failure or delay in enforcing any of its rights.

If Borrower defaults under the Agreement, Lender may proceed immediately against Guarantor or
Borrower, or both, without prior notice to Guarantor, or Lender may enforce against Guarantor or
Borrower, or both, any rights that it has under the Agreement or pursuant to applicable laws. If the
Agreement terminates and Lender has any rights it may enforce against Borrower after
termination, Lender may enforce those rights against Guarantor without giving previous notice to
Borrower or Guarantor, or without making any demand on either of them. This Guarantee is a
guarantee of payment and not of collection.

Guarantor waives the right to require Lender to (1) proceed against Borrower; (2) proceed against
or exhaust any security that Lender holds from Borrower; or (3) pursue any other remedy in
Lender's power. Guarantor waives any defense by reason of any disability of Borrower, including
but not limited to any limitation on the liability or obligation of Borrower under the Agreement or

its estate in bankruptcy or of any remedy for the enforcement thereof, resulting from the operation of any present or future provision of the National Bankruptcy Act or other statute, or from the decision of any court, and waives any other defense based on the termination of Borrower's liability from any cause whatsoever. Until all of Borrower's obligations to Lender have been discharged in full, Guarantor has no right of subrogation against Borrower. Guarantor waives their right to enforce any remedies that Lender now has, or later may have against Borrower. Guarantor waives any right to participate in any security now or later held by Lender. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notices of acceptance of this Guarantee, and waives all notices of the existence, creation or incurring of new or additional obligations.

This Guarantee shall continue to be effective, or be reinstated, as the case may be, if at any time any whole or partial payment or performance of any obligation under the Agreement is or is sought to be rescinded or must otherwise be restored or returned by Lender upon the insolvency or bankruptcy of Borrower, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for Borrower or any substantial part of Borrower's property, or otherwise, all as though such payments and performance had not been made.

If Lender disposes of its interest in the Agreement, "Lender", as used in this Guarantee, shall mean Lender's successors.

If Lender is required to enforce Guarantor's obligations by legal proceedings, Guarantor shall pay to Lender all costs incurred, including, without limitation, reasonable attorneys' fees. Guarantor hereby waives trial by jury in any such legal proceedings.

If any term or provision of this Guarantee, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of this Guarantee, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Guarantee shall be valid and be enforced to the fullest extent permitted by law.

No waiver by Lender of any provision or right hereunder shall be implied from any omission by Lender to take any action on account of Lender's right under such provision. Any express waiver by Lender of any provision or right hereunder shall not act as a waiver of any provision or right elsewhere contained herein, and shall only act as a waiver as specifically expressed in said waiver, and only for the time and to the extent therein stated. One or more waivers by Lender shall not be construed as a waiver of a subsequent breach of the same provision or right.

The rights and remedies given to Lender by this Guarantee shall be deemed to be cumulative and not one of such rights and remedies shall be exclusive at law or in equity of the rights and remedies which Lender might otherwise have by virtue of a default under this Guarantee, and the exercise of one such right or remedy by Lender shall not impair Lender's standing to exercise any other rights or remedies.

All the terms, provisions and agreements of this Guarantee shall be construed liberally in favor of Lender, shall inure to the benefit of and be enforceable by Lender, its successors and assigns, and shall be binding upon Guarantor, and his executors, representatives, administrators and assigns. In the event of the death of the Guarantor, the obligation of the deceased Guarantor under this Guarantee shall continue in full force and effect with respect to estate of such deceased Guarantor.

This Guarantee shall be governed by and construed in accordance with the laws of the State of Idaho.

GUARANTOR:

Keith O. Crews

By: _____
    Keith O. Crews, Individually

GUARANTOR:

Micah Eigler

By: _____
    Micah Eigler, Individually

EXHIBIT A


(Attachments)



Status: APPROVED

**Tel:** +1 (689) 888-0111

**Em:** info@trustfundcapital.org

**Trust Funds Capital.**

2801 SW College Road.
Ocala, FL 34474.

**Standard Settlement / Repayment Terms & Conditions.**

Dear Stewart Lowinger,

Kindly find below your repayment terms and conditions.

Amount:                    USD 255,000,000.00
Interest Rate:             4.00%
Payment Term:              10 Years
Annual Repayment:          USD 26,520,000.00
Number of Payments:        10

Cumulative Payments:       USD 265,200,000.00
Total Interest Paid:       USD 10,200,000.00

**Mode of Settlement.**

• Digital Private Equity Funding.

You are required to set up a digital account with our preferred payment service provider and provide your wallet reference for funding. ( Note: Funding might take 1-3 Business Days to reflect. )

Bitrei- https://bitrei.io/

**Mode of Repayment.**

• Digital Private Equity Funding.

Repayments can be made through our payment service provider "Bitrei.io" to our wallet reference which would be provided at the time of repayment.

• Wire Transfer.

Repayments can be made through a wire transfer to our bank account which would be provided at the time of repayment.

• ACH ( Automated Clearing House )

Repayments can be made through a direct deposit to our bank account which would be provided at the time of repayment.

**Repayment Conditions.**

• Voluntary Early Repayment.

The receiving party is entitled to make repayments including accumulated interest in one lump sum at anytime, including before the end of the Payment Term. An early repayment reward of 0.25% will be deducted from the final payment.

Note: This is to encourage the receiving party to pay up on time.

• Late Payment Penalty.

A daily late payment penalty shall be imposed on any amount not repaid at the end of the Payment Term at the rate of 2.5% of the unpaid balance per day. If the receiving party fails to repay at the end of the grace period, we will exercise our rights as the pledgee.

We may not exercise our rights under the section ( Late Payment Penalty ) above if the receiving party is in good faith cooperating diligently to resolve the payment.

Your signature below indicates that you have read, understood, and agreed with the Terms & Conditions found on this PDF document.

**RECEIVING PARTY ( BUSINESS NAME ) :** MDBN INC.

Signature of Representative: *Stewart Lowinger*   Bvn:   9824245

Type or Printed Name:  Stewart Lowinger        Date:  02/10/2021

**ISSUING PARTY ( BUSINESS NAME ) : TRUST FUNDS CAPITAL LTD.**

Signature of Issuing Officer:

Type or Printed Name: **Luis Osorio**        Date:  02/10/2021

Please call me if you have any questions or need additional information. My number is +1 (352) 888-6668.

Best Regards,

Luis Osorio
Chief Financial Officer
Trust Funds Capital



**FOUR SQUAREBIZ LLC**
**CO-VENTURE EQUITY AGREEMENT**

This Operating Agreement ("Operating Agreement") is made and entered into as of February 16, 2021, ("Effective Date"), and adopted, executed, and agreed to, for good and valuable consideration, by all the Members of **FOUR SQUAREBIZ LLC** (hereinafter referred to as "Company") and the Loan Co-venture partner organization MDBN INC.

**1.01. Formation.** The Company has been organized as a member managed, A Wyoming limited liability company by the filing of Articles of Organization and initial report (the "Articles") under and pursuant to the State of Wyoming's Limited Liability Company Law, as found in Revised Statutes (as amended from time to time, the "Act").

 **Name.** The name of the Company is "**FOUR SQUAREBIZ, LLC**" and all Company business must be conducted in that name or such other names that may be selected by a Majority Interest (as defined in Section 5.02) and that comply with applicable law.
**Purposes.** The purpose of the Company is to acquire collateral loan, equity securities or debt instruments of growth companies or other business entities, including but not limited to early stage privately held companies, and to engage in any other business or activity that now or hereafter may be necessary, incidental, proper, advisable, or convenient to accomplish the foregoing purposes (including obtaining financing therefor) and that is not forbidden by law.
**Term.** The Company commenced on the date the Articles of Organization were filed with the Secretary of State of Wyoming and shall continue in existence for the period fixed in this Operating Agreement may specify.
**Co-Venture Partnership.** The FSB intend that the MDBN is not a partnership (including a limited partnership) or joint venture, for any purposes other than applicable statues detailed in this Co-Venture Agreement may not be construed to suggest otherwise. FSB as a funding recipient is obligated to pay commissions and DSTEM Coin Equity to MDBN for arranging and processing an approval from the lending institution hereafter referred to as funding/lending source.

1. The parties commit themselves to (i) keep agreement confidential, to not disclose any of the details relating to its terms and conditions except to those persons or companies directly involved with the performance and/or closing of the transactions contemplated herein; and (ii) not make copies of this Agreement or any modifications or reproductions whatsoever. Should any such reproductions be made they shall have no legal standing or effect.

2. It is understood that "FSB" is the principal receiver of the Loan Agreement via a corporate resolution and officer of the corporation of the financial partner owning the funds and has access, either directly or indirectly, to various financial institutions, funding ██████ms and financial partners.

3. through this agreement confirmed by the applicant signature, has requested that "MDBN." Is to assist Four SquareBiz LLC in participating in and/or conducting one or more business transactions either directly or indirectly in the position of deal facilitator.

4. that may result in the securing of the collateral for APPLICANT as further identified herein. APPLICANT recognizes that any benefit obtained by or through "within the scope of the agreed upon is for the sole benefit of APPLICANT and its various private business interests.

**Deal Summary**

FSB has authorized MDBN to submit a loan application for Two Hundred Fifty-Five Million USD ($255,000,000). The wallet info is as follows:

FSB Wallet Address:   ████████

████████████████████████████████

MDBN Wallet info:

Wallet Address:

Wallet Reference Number:

`6f36048b-6be5`

Upon approval MDBN is to receive:

A. Five Million USD for its own projects and deal plays solely for its own purposes without any participation from FSB unless authorized by MDBN.
A five percent commission will be leverage on the remaining Two Hundred Fifty Million USD ($250,000,000) equaling no more than Twelve Million Five Hundred Thousand USD ($12,500,000). This satisfies all cash commitments due to a successful closing event of the loan on February 17th, 2021. MDBN will be responsible for taxes and all applicable fees associated with the Five Million USD ($5,000,000) for project funding as well as the five percent commission of ████████llion Five Hundred Thousand USD ($12,500,000), totaling Seventeen Million Five Hundred Thousand USD ($17,500,000).

B. MDBN will transfer the balance of Two Hundred Thirty-Seven Million Five Hundred Thousand USD ($237,500,000) into a FSB wallet controlled corporate account that is unrestricted and completely accessible for financial transaction enablement including the monetizing and transferring of the above state transaction into other FSB controlled corporate accounts.

Termination of Co-Venture Agreement will result within seventy-two hours after this agreement has be accepted by all transaction parties included but not limited to principals and depletion of lendable funds prior to the movement of those funds into the FSB Corporate accounts within the previous seventy-two hours.

Disclaimer all parties ████████d identified in this co-venture agreement will commit to the best interest of all parties involved in this agreement to bring forth ████████████████████████████ binding document and will adhere to the customs and provisioning of legal authorities in the state of Wyoming where FSB has been formed and given license to operate as a viable and legal business operations.

**Signatories**

For and on behalf of **Four (4) Square Biz LLC**

Name:  Keith O. Crews

Signature:  *Keith O Crews*

Title: Chairman
Company:   4 SquareBiz LLC
Passport Number: ▮▮▮▮▮▮
Date of Issue: 09/20/2018
Date of Expiry: 09/19/2028
Country of Issuance: United States
Date: 02/16/2021
_____

For and on behalf of **MDBN INC**

Name: Stewart Lowinger

Signature: By: *Stewart Lowinger*

Title: CEO
Company: MDBN INC.
Driver's License Number: ▮▮▮▮▮▮
Date of Issue: 02/13/2018
Date of Expiry: 02/25/2022
State of Issuance: California
Date: 02/16/2021
_____



Dear Keith Crews,

Thank you for choosing Bitrei.io. Your Withdrawal request of $233,000,000.00 ( 4,447.74 BTC ) at $52386.07 is processing. Kindly submit your Tax Clearance certificate to complete your withdrawal or proceed to make payment if fees have not been paid.

BENEFICIARY'S INFORMATION

| | |
|---|---|
| BANK NAME: | CHASE BANK |
| ACCOUNT NUMBER: | ██████████ |
| ACCOUNT TYPE: | CORPORATE |
| ROUTING NUMBER: | 021000021 |

HOW TO CALCULATE  AND PAY YOUR TAX CLEARANCE FEE.

AMOUNT WITHDRAWN (AW) = **4,447.74 BTC**

3.8% OF AW = **169 BTC**



Your Tax Clearance Certificate would be provided on confirmation of Tax Payment.

**Note: Because of our AML policy your tax clearance fee cannot be deducted from your account since you're only allowed one withdrawal in every trading cycle.**

Thank you,

Bitrei.io
Financial Help-Desk
+1(888) 229-4449

Please note, our phone channel is  used for account compromise support. For other inquiries, kindly send us an email **support@bitrei.io**

© 2020 Bitrei.io. All rights reserved.

# EXHIBIT B

# BITCOIN LOAN AGREEMENT

THIS BITCOIN LOAN AGREEMENT (the "Agreement") is made this ___26th___ day of April, 2021 (the "Effective Date") by and between Four SquareBiz, LLC, a Wyoming limited liability company with a registered address at 3350 Riverwood Pkwy Suite 1900, Atlanta, GA 30339; Keith O. Crews, an individual residing at ███████████, Kennesaw, GA 30152 (collectively, the "Borrower"); Micah Eigler, and individual residing at ███████████, Encino, CA 91316, (the "Co-signer"); and Cody J. Schueler, an individual with a mailing address at ███████████ ██, Coeur d'Alene, Idaho 83814 (the "Lender"). The Borrower, Co-Signor, and Lender may be referred to herein individually as "Party" or collectively as "Parties."

## RECITALS

WHEREAS, the Lender has agreed to loan the Borrower three hundred sixty-three thousand dollars ($363,000.00) to be paid in Bitcoins ("BTC") for the Borrower to pay for the Funds Transfer Clearance Code ("FTCC") to transfer two hundred thirty million dollars ($230,000,000.00). Attached hereto and incorporated herein as Exhibit A is a true and accurate copy of the FTCC payment request from TrustFunds Private Bank;

WHEREAS, in exchange for the Lender transferring BTC to the Borrower, the Borrower will repay the Lender: seven hundred twenty-six thousand dollars ($726,000.00) to be paid in BTC (including any penalties or fees incurred);

WHEREAS, to secure the Lender's interest in the loaned funds, the Borrower and the Co-signer agree to personally guaranty the loan and all sums due and owing to the Lender;

WHEREAS, in consideration for Co-signer agreeing to secure the loan, Borrower agrees to compensate the Co-signer; and

WHEREAS, the Borrower and Co-signer shall be jointly and severally liable for all sums dues and owing to the Lender;

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, including without limitation, the mutual consent of the Parties hereto, the Borrower, Co-signer, and Lender the Parties, intending to be legally bound, hereby agree as follows:

1. Terms and Conditions.
    a. Lender's Performance. Upon dual execution of this Agreement, the Lender shall loan three hundred sixty-three thousand dollars ($363,000.00) in BTC to the Borrower. The Lender shall effectuate said loan by the funds directly to the Borrower's BTC wallet.

        i. The Borrower's BTC Wallet address is:

        ████████████████████ _____

    b. Borrower's Performance. On or before 5:00 pm PST on Friday, April 30, 2021, the Borrower shall send the following to the Lender:

        i. Seven hundred twenty-six thousand dollars ($726,000.00), paid in BTC, to the Lender's BTC Wallet

            1. The Lender's BTC Wallet address is:

            2. ███████████████████████████; and

        ii. To reimburse the Lender for the initial taxable event of converting Ethereum to BTC, the Borrower shall send the Lender 50,000 Dstem coins. It is understood and agreed that it is not yet certain which cryptocurrency wallet will be able to receive the Dstem Coins. Borrower expressly agrees to block and hold the Lender's Dstem Coins until such time as the Dstem Coin wallet is determined and is readily transferrable to the Lender's wallet.

        iii. The Lender shall also have the option to purchase an additional one hundred thousand (100,000) Dstem Coins at a valuation of two dollars and 50/100 ($2.50) per coin. Lender shall hold this exclusive right until such time as the Dstem Coin IEO. The Borrower shall provide the Lender with fourteen (14) days written notice of the Dstem Coin IEO. Failure to notify the Lender of the IEO shall result in the Borrower forfeiting one hundred thousand (100,000) Dstem Coins to the Lender.

    c. Co-signer. The Co-signer acknowledges, has read, and understands the Agreement and agrees to accept full responsibility for the fulfillment of all the Terms and Conditions of the Agreement, including Section 1(b) and any other amounts due under this Agreement.

        i. The Co-signer shall remain responsible for the term of the Agreement.

    d. Guarantee.

        i. Concurrently with its execution and delivery of this Agreement, Borrower and Co-signer shall deliver to Lender a guarantee from Guarantor in substantially the form of Schedule 1 attached hereto and made a part hereof. The Borrower and Co-signer shall personally guarantee all monetary terms of this Agreement, including any and all penalties that may accrue. The Guaranty is attached hereto as Schedule 1.

2. Breach.

    a. In the event the Borrower fails to perform under the terms of Section 1(b), the Borrower shall be automatically deemed in default. No notice is required.

    b. Each day the Borrower remains in default, a twenty percent (20%) interest penalty shall accrue on a daily basis. Said penalty shall be payable in BTC or as otherwise stipulated to by the Lender.

3. Representations and Warranties. The Borrower warrants and represents to the Lender on the date hereof that this Agreement has been duly and validly authorized, executed and

delivered on behalf of the Borrower and constitutes the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with its terms. The Borrower further warrants and represents that all funds are lien-free and of non-criminal and non-terrorist origin.

4. Remedies. Upon the occurrence and during the continuation of any Event of Default, the Lender may, at its option, (a) declare any outstanding sums hereunder immediately due and payable and/or (b) exercise all other rights and remedies available to the Lender herein, under applicable law against both the Borrower and the Co-signer jointly and severally. The Lender shall have the right to rescind any acceleration in payment of the principal amounts due hereunder for default, as aforesaid, if the Lender so elects, in which event this Agreement shall be construed, interpreted and enforced in the same manner as if the Lender had never elected to declare the unpaid principal balance hereof at once due and payable.

5. Rights and Remedies Cumulative. No delay or omission by the Lender in exercising any right or remedy herein shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies herein. All rights of the Lender stated herein are cumulative and in addition to all other rights provided by law.

6. Governing Law. This Agreement is governed by the laws of the State of Idaho, and any questions arising hereunder shall be construed or determined in accordance with such law. The venue for any lawsuit filed by either party related to the terms of this agreement shall be located exclusively in the federal courts of the state of Idaho, U.S.A.

7. Notices. Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by registered or certified mail (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a party may designate in accordance herewith), or telefacsimile, to the respective address set forth below:

Borrower:
Four SquareBiz, LLC
Name: Keith O. Crews, Chairman
Address: 3350 Riverwood Pkwy Suite 1900, Atlanta, GA 30339
Phone: 423-284-7854
E-mail: okcrews@4squarebiz.com

Borrower:
Name: Keith O. Crews, Individually
Address: ███████████████████, Kennesaw, GA 30152
Phone: 423-284-7854
E-mail: okcrews@yahoo.com

Lender:
Name: Cody J. Schueler
Address: ████████████████, Coeur d'Alene, Idaho 83814, U.S.A.
Phone: +1-406-370-6178
E-mail: Cody@puremanagementsolutions.com

Co-signer:
Name: Micah Eigler
Address: ████████████, Encino, CA 91316
Phone: 1-818-939-2057
E-mail: Eigler1@gmail.com

Any party may change its address by giving any other party written notice of its new address as herein provided.

8. **Attorney Fees and Costs.** If either Party commences legal proceedings to interpret or enforce the terms of this Agreement, the prevailing Party will be entitled to recover court costs and reasonable attorney fees.

9. **Modifications.** All modifications or amendments to this Agreement shall be effective only when reduced to writing and signed by both parties hereto.

10. **Entire Agreement.** This Agreement constitutes the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements.

11. **Successors and Assigns.** This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, that neither party may assign this Agreement or any rights or duties hereunder without the prior written consent of the other party (such consent to not be unreasonably withheld). Notwithstanding the foregoing, in the event of a change of control of Lender or Borrower, prior written consent shall not be required so such party provides the other party with written notice prior to the consummation of such change of control. For purposes of the foregoing, a "change of control" shall mean a transaction or series of related transactions in which a person or entity, or a group of affiliated (or otherwise related) persons or entities acquires from stockholders of the party shares representing more than fifty percent (50%) of the outstanding voting stock of the such party.

12. **Severability of Provisions.** Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

13. **Counterpart Execution.** This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by telefacsimile, email or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by telefacsimile, email or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

DocuSign Envelope ID: 2C0CB175-2494-4D27-B877-A954E670619B

14. Miscellaneous. Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders.

(The remainder of this page is intentionally blank. Signature page(s) to follow.)

IN WITNESS WHEREOF, each of the Parties hereto have executed this Agreement as of the date and year first written above.

LENDER

Cody J. Schueler

BORROWER:

Four Squarebiz, LLC

By: _____    4/26/2021

Cody J. Schueler, Individually

By: _____    4/26/2021

Keith O. Crews
Its: Chairman

BORROWER:

Keith O. Crews

By: _____    4/26/2021

Keith O. Crews, Individually

CO-SIGNER:

Micah Eigler

By: _____    4/26/2021

Micah Eigler, Individually

DocuSign Envelope ID: 2C0CB175-2494-4D27-B877-A854E670619B

SCHEDULE 1

GUARANTEE

KEITH O. CREWS, a married individual ("Borrower"), whose address is ███████████
██, Kennesaw, GA 30152 and MICAH EIGLER, a married individual, whose address is ███
███████, Encino, CA 91316 ("Co-signer") (collectively "Guarantor") as material inducement
to and in consideration of CODY J. SCHUELER, an individual whose mailing address is ███
███████, Coeur d'Alene, Idaho 83814, U.S.A. ("Lender") entering into a BITCOIN LOAN
AGREEMENT ("Agreement"), dated as of April 26th___, 2021, pursuant to which Lender lent
three hundred sixty-three thousand dollars ($363,000.00) in Bitcoin to the Borrower,
unconditionally and absolutely guarantees and promises, to and for the benefit of Lender, its
successors and assigns, that Guarantor shall perform the provisions of the Agreement including,
but not limited to, payment of all sums, charges, costs and expenses payable by Borrower and Co-
Signer, its successors and assigns, under the Agreement and the full performance and observance
of all of the covenants, terms, conditions and agreements therein provided to be performed and
observed by Borrower and Co-signer, as well as any successors and assigns.

If Guarantor is more than one person, Guarantors' obligations are joint and several and are
independent of Party's obligations under the Agreement and shall not be discharged except by
payment to and receipt by Lender of all sums due under the Agreement. A separate action may be
brought or prosecuted against any Guarantor whether the action is brought or prosecuted against
any other Guarantor or Borrower, or all, or whether any other Guarantor or Borrower, or all, are
joined in the action.

Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability under this
Guarantee.

The provisions of the Agreement may be changed by agreement between Lender and Borrower,
or their respective successors or assigns, at any time, or by course of conduct, without the consent
of or without notice to Guarantor, including, without limitation, the obligations of Borrower, the
term of the Agreement or the time for performance of any obligation thereunder, or the re-
Agreement, compromise or settlement of any Agreement obligations. This Guarantee shall
guarantee the performance of the Agreement as changed. Assignment of the Agreement (as
permitted by the Agreement) shall not affect this Guarantee.

This Guarantee shall not be affected by Lender's failure or delay in enforcing any of its rights.

If Borrower defaults under the Agreement, Lender may proceed immediately against Guarantor or
Borrower, or both, without prior notice to Guarantor, or Lender may enforce against Guarantor or
Borrower, or both, any rights that it has under the Agreement or pursuant to applicable laws. If the
Agreement terminates and Lender has any rights it may enforce against Borrower after
termination, Lender may enforce those rights against Guarantor without giving previous notice to
Borrower or Guarantor, or without making any demand on either of them. This Guarantee is a
guarantee of payment and not of collection.

Guarantor waives the right to require Lender to (1) proceed against Borrower; (2) proceed against
or exhaust any security that Lender holds from Borrower; or (3) pursue any other remedy in
Lender's power. Guarantor waives any defense by reason of any disability of Borrower, including
but not limited to any limitation on the liability or obligation of Borrower under the Agreement or

its estate in bankruptcy or of any remedy for the enforcement thereof, resulting from the operation of any present or future provision of the National Bankruptcy Act or other statute, or from the decision of any court, and waives any other defense based on the termination of Borrower's liability from any cause whatsoever. Until all of Borrower's obligations to Lender have been discharged in full, Guarantor has no right of subrogation against Borrower. Guarantor waives their right to enforce any remedies that Lender now has, or later may have against Borrower. Guarantor waives any right to participate in any security now or later held by Lender. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notices of acceptance of this Guarantee, and waives all notices of the existence, creation or incurring of new or additional obligations.

This Guarantee shall continue to be effective, or be reinstated, as the case may be, if at any time any whole or partial payment or performance of any obligation under the Agreement is or is sought to be rescinded or must otherwise be restored or returned by Lender upon the insolvency or bankruptcy of Borrower, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for Borrower or any substantial part of Borrower's property, or otherwise, all as though such payments and performance had not been made.

If Lender disposes of its interest in the Agreement, "Lender", as used in this Guarantee, shall mean Lender's successors.

If Lender is required to enforce Guarantor's obligations by legal proceedings, Guarantor shall pay to Lender all costs incurred, including, without limitation, reasonable attorneys' fees. Guarantor hereby waives trial by jury in any such legal proceedings.

If any term or provision of this Guarantee, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of this Guarantee, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Guarantee shall be valid and be enforced to the fullest extent permitted by law.

No waiver by Lender of any provision or right hereunder shall be implied from any omission by Lender to take any action on account of Lender's right under such provision. Any express waiver by Lender of any provision or right hereunder shall not act as a waiver of any provision or right elsewhere contained herein, and shall only act as a waiver as specifically expressed in said waiver, and only for the time and to the extent therein stated. One or more waivers by Lender shall not be construed as a waiver of a subsequent breach of the same provision or right.

The rights and remedies given to Lender by this Guarantee shall be deemed to be cumulative and not one of such rights and remedies shall be exclusive at law or in equity of the rights and remedies which Lender might otherwise have by virtue of a default under this Guarantee, and the exercise of one such right or remedy by Lender shall not impair Lender's standing to exercise any other rights or remedies.

All the terms, provisions and agreements of this Guarantee shall be construed liberally in favor of Lender, shall inure to the benefit of and be enforceable by Lender, its successors and assigns, and shall be binding upon Guarantor, and his executors, representatives, administrators and assigns. In the event of the death of the Guarantor, the obligation of the deceased Guarantor under this Guarantee shall continue in full force and effect with respect to estate of such deceased Guarantor.

This Guarantee shall be governed by and construed in accordance with the laws of the State of Idaho.

GUARANTOR:

Keith O. Crews

By: _____   4/26/2021

Keith O. Crews, Individually

GUARANTOR:

Micah Eigler

By: _____   4/26/2021

Micah Eigler, Individually

EXHIBIT A


(Attachments)



Dear Keith Crews,

Thank you for choosing Trust Funds Private Bank. Find below your
Digital Investment account information.

ACCOUNT NAME: Keith Crews
ACCOUNT NUMBER: ██████████
ACCOUNT TYPE: Digital Investment
TRANSACTION NUMBER: 00126

Your Transfer request of $230,000,000.00 is being processed.
Kindly proceed to pay your Funds Transfer Clearance Code (FTCC)
to complete your withdrawal.

BENEFICIARY'S INFORMATION.

BANK NAME: Ghana International Bank PLC
ACCOUNT NAME: Mega Bank Gambia Ltd
ACCOUNT NUMBER: ██████████
ROUTING NUMBER: 60-92-63
IBAN: GB63GHIB60926315916001

Your Funds are currently processing and as soon as the FTC code
is obtained your funds will be deposited in the beneficiary's
account.

Your FTC code will be given to you after all necessary FTC
payments have been paid.

===============================================================
Your transfer request of $230,000,000.00 incurred a total of
$362,965.56 as FTCC
===============================================================
Kindly Make FTCC payment below.

BITCOIN WALLET: ████████████████████████████
Amount: 362,965.56 USD

For further inquiries on our Internet Banking facilities, send
an email to info@trustfundsprivatebank.com


Thank you for banking with us,
Internet Banking Operations
TrustFunds Private Bank

# EXHIBIT C

# BITCOIN LOAN AGREEMENT

THIS BITCOIN LOAN AGREEMENT (the "Agreement") is made this 29th day of April, 2021 (the "Effective Date") by and between Four SquareBiz, LLC, a Wyoming limited liability company with a registered address at 3350 Riverwood Pkwy Suite 1900, Atlanta, GA 30339; Keith O. Crews, an individual residing at ███████████, Kennesaw, GA 30152 (collectively, the "Borrower"); Micah Eigler, and individual residing at ███████████, Encino, CA 91316, (the "Co-signer"); and Cody J. Schueler, an individual with a mailing address at ███████████ ██, Coeur d'Alene, Idaho 83814 (the "Lender"). The Borrower, Co-Signor, and Lender may be referred to herein individually as "Party" or collectively as "Parties."

## RECITALS

WHEREAS, the Lender has agreed to loan the Borrower two hundred ninety-six thousand one hundred dollars ($296,100.00) to be paid in Bitcoins ("BTC") for the Borrower to pay for the HMRC Tax Clearance Pin ("TCP") to pay taxes on the transfer of Borrower's loan fund of two hundred thirty million dollars ($230,000,000.00). Attached hereto and incorporated herein as Exhibit A is a true and accurate copy of the FTCC payment request from TrustFunds Private Bank;

WHEREAS, the Borrower and Lender have entered into two prior loan Agreements: the first loan dated April 6, 2021 (attached hereto and incorporated herein as Exhibit A) and the second loan dated April 26, 2021 (attached hereto and incorporated herein as Exhibit B);

WHEREAS, in exchange for the Lender loaning the funds to the Borrower, the Borrower will repay the Lender: five hundred ninety-two thousand two hundred dollars ($592,200.00) to be paid in BTC (including any penalties or fees incurred);

WHEREAS, to secure the Lender's interest in the loaned funds, the Borrower and the Co-signer agree to personally guaranty the loan and all sums due and owing to the Lender;

WHEREAS, the Borrower and Co-signer shall be jointly and severally liable for all sums dues and owing to the Lender;

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, including without limitation, the mutual consent of the Parties hereto, the Borrower, Co-signer, and Lender the Parties, intending to be legally bound, hereby agree as follows:

1. Terms and Conditions.
    a. Lender's Performance. Upon dual execution of this Agreement, the Lender shall loan two hundred ninety-six thousand one hundred dollars ($296,100.00) in BTC to the Borrower. The Lender shall effectuate said loan by the funds directly to the Borrower's bank (TrustFunds Private Bank) BTC wallet.

        i. The Borrower's Bank BTC Wallet address is:

    b.  Borrower's Performance. On or before 5:00 pm PST on Tuesday, May 4, 2021, the Borrower shall send the following to the Lender:

        i.  Five hundred ninety-two thousand two hundred dollars ($592,200.00), paid in BTC, to the Lender's BTC Wallet

            1.  The Lender's BTC Wallet address is:

            2.  ████████████████████; and

    c.  Co-signer. The Co-signer acknowledges, has read, and understands the Agreement and agrees to accept full responsibility for the fulfillment of all the Terms and Conditions of the Agreement, including Section 1(b) and any other amounts due under this Agreement.

        i.  The Co-signer shall remain responsible for the term of the Agreement.

    d.  Guarantee.

        i.  Concurrently with its execution and delivery of this Agreement, Borrower and Co-signer shall deliver to Lender a guarantee from Guarantor in substantially the form of Schedule 1 attached hereto and made a part hereof. The Borrower and Co-signer shall personally guarantee all monetary terms of this Agreement, including any and all penalties that may accrue. The Guaranty is attached hereto as Schedule 1.

2.  Breach.
    a.  In the event the Borrower fails to perform under the terms of Section 1(b), the Borrower shall be automatically deemed in default. No notice is required.
    b.  Each day the Borrower remains in default, a twenty percent (20%) interest penalty shall accrue on a daily basis. Said penalty shall be payable in BTC or as otherwise stipulated to by the Lender.

3.  Prior Bitcoin Loan Agreements. The Lender and Borrower entered into separate loan agreements on April 6, 2021 (Exhibit A) and April 26, 2021 (Exhibit B). The Borrower hereby re-affirms all prior Loan Agreements made with Lender. The Borrower expressly agrees that the Loan Agreements and their associated terms, including paragraph 2, are wholly reasonable and consented to.

4.  Representations and Warranties. The Borrower warrants and represents to the Lender on the date hereof that this Agreement has been duly and validly authorized, executed and delivered on behalf of the Borrower and constitutes the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with its terms. The Borrower further warrants and represents that all funds are lien-free and of non-criminal and non-terrorist origin.

5.  Remedies. Upon the occurrence and during the continuation of any Event of Default, the Lender may, at its option, (a) declare any outstanding sums hereunder immediately due and payable and/or (b) exercise all other rights and remedies available to the Lender herein,

under applicable law against both the Borrower and the Co-signer jointly and severally. The Lender shall have the right to rescind any acceleration in payment of the principal amounts due hereunder for default, as aforesaid, if the Lender so elects, in which event this Agreement shall be construed, interpreted and enforced in the same manner as if the Lender had never elected to declare the unpaid principal balance hereof at once due and payable.

6. Rights and Remedies Cumulative. No delay or omission by the Lender in exercising any right or remedy herein shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies herein. All rights of the Lender stated herein are cumulative and in addition to all other rights provided by law.

7. Governing Law. This Agreement is governed by the laws of the State of Idaho, and any questions arising hereunder shall be construed or determined in accordance with such law. The venue for any lawsuit filed by either party related to the terms of this agreement shall be located exclusively in the federal courts of the state of Idaho, U.S.A.

8. Notices. Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by registered or certified mail (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a party may designate in accordance herewith), or telefacsimile, to the respective address set forth below:

Borrower:
Four SquareBiz, LLC
Name: Keith O. Crews, Chairman
Address: 3350 Riverwood Pkwy Suite 1900, Atlanta, GA 30339
Phone: 423-284-7854
E-mail: okcrews@4squarebiz.com

Borrower:
Name: Keith O. Crews, Individually
Address: ███████████████, Kennesaw, GA 30152
Phone: 423-284-7854
E-mail: okcrews@yahoo.com

Lender:
Name: Cody J. Schueler
Address: ███████████████, Coeur d'Alene, Idaho 83814, U.S.A.
Phone: +1-406-370-6178
E-mail: Cody@puremanagementsolutions.com

Co-signer:
Name: Micah Eigler
Address: ███████████████, Encino, CA 91316
Phone: 1-818-939-2057
E-mail: Eigler1@gmail.com

Any party may change its address by giving any other party written notice of its new address as herein provided.

9. **Attorney Fees and Costs.** If either Party commences legal proceedings to interpret or enforce the terms of this Agreement, the prevailing Party will be entitled to recover court costs and reasonable attorney fees.

10. **Modifications.** All modifications or amendments to this Agreement shall be effective only when reduced to writing and signed by both parties hereto.

11. **Entire Agreement.** This Agreement constitutes the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements.

12. **Successors and Assigns.** This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, that neither party may assign this Agreement or any rights or duties hereunder without the prior written consent of the other party (such consent to not be unreasonably withheld). Notwithstanding the foregoing, in the event of a change of control of Lender or Borrower, prior written consent shall not be required so such party provides the other party with written notice prior to the consummation of such change of control. For purposes of the foregoing, a "change of control" shall mean a transaction or series of related transactions in which a person or entity, or a group of affiliated (or otherwise related) persons or entities acquires from stockholders of the party shares representing more than fifty percent (50%) of the outstanding voting stock of the such party.

13. **Severability of Provisions.** Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

14. **Counterpart Execution.** This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by telefacsimile, email or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by telefacsimile, email or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

15. **Miscellaneous.** Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders.

(The remainder of this page is intentionally blank. Signature page(s) to follow.)

IN WITNESS WHEREOF, each of the Parties hereto have executed this Agreement as of the date and year first written above.

LENDER

Cody J. Schueler

By: _____
      Cody J. Schueler, Individually

BORROWER:

Four Squarebiz, LLC

By: _____
      Keith O. Crews
      Its: Chairman

Four Squarebiz, LLC

Four Squarebiz, LLC

By: _____
      Samantha Crooks
      Its: COO

BORROWER:

Keith O. Crews

By: _____
      Keith O. Crews, Individually

CO-SIGNER:

Micah Eigler

By: _____

Micah Eigler, Individually

SCHEDULE 1

GUARANTEE

KEITH O. CREWS, a married individual ("Borrower"), whose address is ███████████
███, Kennesaw, GA 30152 and MICAH EIGLER, a married individual, whose address is ███
████████, Encino, CA 91316 ("Co-signer") (collectively "Guarantor") as material inducement
to and in consideration of CODY J. SCHUELER, an individual whose mailing address is ███
█████, Coeur d'Alene, Idaho 83814, U.S.A. ("Lender") entering into a BITCOIN LOAN
AGREEMENT ("Agreement"), dated as of April __29th__, 2021, pursuant to which Lender lent two
hundred ninety-six thousand one hundred dollars ($296,100.00) in Bitcoin to the Borrower,
unconditionally and absolutely guarantees and promises, to and for the benefit of Lender, its
successors and assigns, that Guarantor shall perform the provisions of the Agreement including,
but not limited to, payment of all sums, charges, costs and expenses payable by Borrower and Co-
Signer, its successors and assigns, under the Agreement and the full performance and observance
of all of the covenants, terms, conditions and agreements therein provided to be performed and
observed by Borrower and Co-signer, as well as any successors and assigns.

If Guarantor is more than one person, Guarantors' obligations are joint and several and are
independent of Party's obligations under the Agreement and shall not be discharged except by
payment to and receipt by Lender of all sums due under the Agreement. A separate action may be
brought or prosecuted against any Guarantor whether the action is brought or prosecuted against
any other Guarantor or Borrower, or all, or whether any other Guarantor or Borrower, or all, are
joined in the action.

Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability under this
Guarantee.

The provisions of the Agreement may be changed by agreement between Lender and Borrower,
or their respective successors or assigns, at any time, or by course of conduct, without the consent
of or without notice to Guarantor, including, without limitation, the obligations of Borrower, the
term of the Agreement or the time for performance of any obligation thereunder, or the re-
Agreement, compromise or settlement of any Agreement obligations. This Guarantee shall
guarantee the performance of the Agreement as changed. Assignment of the Agreement (as
permitted by the Agreement) shall not affect this Guarantee.

This Guarantee shall not be affected by Lender's failure or delay in enforcing any of its rights.

If Borrower defaults under the Agreement, Lender may proceed immediately against Guarantor or
Borrower, or both, without prior notice to Guarantor, or Lender may enforce against Guarantor or
Borrower, or both, any rights that it has under the Agreement or pursuant to applicable laws. If the
Agreement terminates and Lender has any rights it may enforce against Borrower after
termination, Lender may enforce those rights against Guarantor without giving previous notice to
Borrower or Guarantor, or without making any demand on either of them. This Guarantee is a
guarantee of payment and not of collection.

Guarantor waives the right to require Lender to (1) proceed against Borrower; (2) proceed against
or exhaust any security that Lender holds from Borrower; or (3) pursue any other remedy in
Lender's power. Guarantor waives any defense by reason of any disability of Borrower, including
but not limited to any limitation on the liability or obligation of Borrower under the Agreement or

its estate in bankruptcy or of any remedy for the enforcement thereof, resulting from the operation of any present or future provision of the National Bankruptcy Act or other statute, or from the decision of any court, and waives any other defense based on the termination of Borrower's liability from any cause whatsoever. Until all of Borrower's obligations to Lender have been discharged in full, Guarantor has no right of subrogation against Borrower. Guarantor waives their right to enforce any remedies that Lender now has, or later may have against Borrower. Guarantor waives any right to participate in any security now or later held by Lender. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notices of acceptance of this Guarantee, and waives all notices of the existence, creation or incurring of new or additional obligations.

This Guarantee shall continue to be effective, or be reinstated, as the case may be, if at any time any whole or partial payment or performance of any obligation under the Agreement is or is sought to be rescinded or must otherwise be restored or returned by Lender upon the insolvency or bankruptcy of Borrower, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for Borrower or any substantial part of Borrower's property, or otherwise, all as though such payments and performance had not been made.

If Lender disposes of its interest in the Agreement, "Lender", as used in this Guarantee, shall mean Lender's successors.

If Lender is required to enforce Guarantor's obligations by legal proceedings, Guarantor shall pay to Lender all costs incurred, including, without limitation, reasonable attorneys' fees. Guarantor hereby waives trial by jury in any such legal proceedings.

If any term or provision of this Guarantee, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of this Guarantee, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Guarantee shall be valid and be enforced to the fullest extent permitted by law.

No waiver by Lender of any provision or right hereunder shall be implied from any omission by Lender to take any action on account of Lender's right under such provision. Any express waiver by Lender of any provision or right hereunder shall not act as a waiver of any provision or right elsewhere contained herein, and shall only act as a waiver as specifically expressed in said waiver, and only for the time and to the extent therein stated. One or more waivers by Lender shall not be construed as a waiver of a subsequent breach of the same provision or right.

The rights and remedies given to Lender by this Guarantee shall be deemed to be cumulative and not one of such rights and remedies shall be exclusive at law or in equity of the rights and remedies which Lender might otherwise have by virtue of a default under this Guarantee, and the exercise of one such right or remedy by Lender shall not impair Lender's standing to exercise any other rights or remedies.

All the terms, provisions and agreements of this Guarantee shall be construed liberally in favor of Lender, shall inure to the benefit of and be enforceable by Lender, its successors and assigns, and shall be binding upon Guarantor, and his executors, representatives, administrators and assigns. In the event of the death of the Guarantor, the obligation of the deceased Guarantor under this Guarantee shall continue in full force and effect with respect to estate of such deceased Guarantor.

This Guarantee shall be governed by and construed in accordance with the laws of the State of Idaho.

GUARANTOR:

Keith O. Crews

DocuSigned by:

*keith Crews*

9FADAFC41F51424...

By: _____

Keith O. Crews, Individually

GUARANTOR:

Micah Eigler

DocuSigned by:

7BB2231FC9A94E8...

By: _____

Micah Eigler, Individually

EXHIBIT A

DocuSign Envelope ID: 547ADEE6-96DF-440E-94B7-B6C3D8A17488

EXHIBIT B

# BITCOIN LOAN AGREEMENT

THIS BITCOIN LOAN AGREEMENT (the "Agreement") is made this 27th day of March, 2021 (the "Effective Date") by and between Four SquareBiz, LLC, a Wyoming limited liability company with a registered address at 3350 Riverwood Pkwy Suite 1900, Atlanta GA 30339; Keith O. Crews, an individual residing at ███████████ Kennesaw GA 30152 (collectively, the "Borrower"); Micah Eigler, and individual residing at ███████████ Encino, CA 91316, (the "Co-signer"); and Cody J. Schueler, an individual with a mailing address at ███████████ ██, Coeur d'Alene, Idaho 83814 (the "Lender"). The Borrower, Co-Signor, and Lender may be referred to herein individually as "Party" or collectively as "Parties."

## RECITALS

WHEREAS, the Lender has agreed to loan the Borrower five (5) Bitcoins ("BTC") for the Borrower to secure private equity funding through Trust Funds Capital, Ltd. and serviced through https://bitrei.io (Attached hereto and Incorporated herein as "Exhibit A" are true and accurate copies of loan documentation supplied by the Borrower);

WHEREAS, in exchange for the Lender transferring BTC to the Borrower, the Borrower will repay the Lender: ten (10) BTC (including tax penalties incurred), DStem Coins, and an option to purchase Dstem Coins;

WHEREAS, to secure the Lender's interest in the BTC, the Borrower and the Co-signer agree to personally guaranty the BTC and all sums due and owing to the Lender;

WHEREAS, in consideration for Co-signer agreeing to secure the loan, Borrower agrees to compensate the Co-signer; and

WHEREAS, the Borrower and Co-signer shall be jointly and severally liable for all sums dues and owing to the Lender;

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, including without limitation, the mutual consent of the Parties hereto, the Borrower, Co-signer, and Lender the Parties, intending to be legally bound, hereby agree as follows:

1. Terms and Conditions.
    a. Lender's Performance. Upon dual execution of this Agreement, the Lender shall loan five (5) BTC to the Borrower. The Lender shall effectuate said loan by sending five (5) BTC directly to the Borrower's BTC wallet.

        i. The Borrower's BTC Wallet address is:

        ███████████████████████[1]

---

[1] The Borrower has indicated that the BTC Wallet address is subject to change. In the event that the wallet address changes, the Borrower shall promptly notify the Lender of the same.

    b.   Borrower's Performance. On or before 5:00 pm PST on Tuesday, April 6, 2021, the Borrower shall send the following to the Lender:

        i.   Ten (10) BTC to the Lender's BTC Wallet

           1.   The Lender's BTC Wallet address is:

           2.   █████████████████████; and

        ii.   To reimburse the Lender for the initial taxable event of converting Ethereum to BTC, the Borrower shall send the Lender 41,443.973913024 Dstem coins. It is understood and agreed that it is not yet certain which cryptocurrency wallet will be able to receive the Dstem Coins. Borrower expressly agrees to block and hold the Lender's Dstem Coins until such time as the Dstem Coin wallet is determined and is readily transferrable to the Lender's wallet.

        iii.   The Lender shall also have the option to purchase an additional one hundred thousand (100,000) Dstem Coins at a valuation of two dollars and 50/100 ($2.50) per coin. Lender shall hold this exclusive right until such time as the Dstem Coin IEO. The Borrower shall provide the Lender with fourteen (14) days written notice of the Dstem Coin IEO.

    c.   Co-signer. The Co-signer acknowledges, has read, and understands the Agreement and agrees to accept full responsibility for the fulfillment of all the Terms and Conditions of the Agreement, including Section 1(b) and any other amounts due under this Agreement.

        i.   The Co-signer shall remain responsible for the term of the Agreement.

        ii.   In exchange for the Co-signer's agreement to sign on to this Agreement, Borrower shall send twenty-five thousand (25,000) Dstem Coins to the Co-signer. It is understood and agreed that it is not yet certain which cryptocurrency wallet will be able to receive the Dstem Coins. Borrower expressly agrees to block and hold the Co-signer's Dstem Coins until such time as the Dstem Coin wallet is determined and is readily transferrable to the Co-signer's wallet.

    d.   Guarantee.

        i.   Concurrently with its execution and delivery of this Agreement, Borrower and Co-signer shall deliver to Lender a guarantee from Guarantor in substantially the form of Schedule 1 attached hereto and made a part hereof. The Borrower and Co-signer shall personally guarantee all monetary terms of this Agreement, including any and all penalties that may accrue. The Guaranty is attached hereto as Schedule 1.

2.   Breach.

    a.   In the event the Borrower fails to perform under the terms of Section 1(b), the Borrower shall be automatically deemed in default.

    b.  Each day the Borrower remains in default, a twenty percent (20%) interest penalty shall accrue. Said penalty shall be payable in BTC or as otherwise stipulated to by the Lender.

3.  Representations and Warranties. The Borrower warrants and represents to the Lender on the date hereof that this Agreement has been duly and validly authorized, executed and delivered on behalf of the Borrower and constitutes the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with its terms. The Borrower further warrants and represents that all funds are lien-free and of non-criminal and non-terrorist origin.

4.  Remedies. Upon the occurrence and during the continuation of any Event of Default, the Lender may, at its option, (a) declare any outstanding sums hereunder immediately due and payable and/or (b) exercise all other rights and remedies available to the Lender herein, under applicable law against both the Borrower and the Co-signer jointly and severally. The Lender shall have the right to rescind any acceleration in payment of the principal amounts due hereunder for default, as aforesaid, if the Lender so elects, in which event this Agreement shall be construed, interpreted and enforced in the same manner as if the Lender had never elected to declare the unpaid principal balance hereof at once due and payable.

5.  Rights and Remedies Cumulative. No delay or omission by the Lender in exercising any right or remedy herein shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies herein. All rights of the Lender stated herein are cumulative and in addition to all other rights provided by law.

6.  Governing Law. This Agreement is governed by the laws of the State of Idaho, and any questions arising hereunder shall be construed or determined in accordance with such law. The venue for any lawsuit filed by either party related to the terms of this agreement shall be located exclusively in the federal courts of the state of Idaho, U.S.A.

7.  Notices. Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by registered or certified mail (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a party may designate in accordance herewith), or telefacsimile, to the respective address set forth below:

Borrower:
Four SquareBiz, LLC
Name: Keith O. Crews, Chairman
Address: 3350 Riverwood Pkwy Suite 1900, Atlanta GA 30339
Phone : 423-284-7854
E-mail : okcrews@4squarebiz.com

Borrower
Name: Keith O. Crews, Individually
Address: ███████████████ Kennesaw GA 30152
Phone : 423-284-7854
E-mail : okcrews@yahoo.com

Page **3** of 10

Lender:
Name: Cody J. Schueler
Address: ██████████████, Coeur d'Alene, Idaho 83814, U.S.A.
Phone: +1-406-370-6178
E-mail: Cody@puremanagementsolutions.com

Co-signer:
Name: Micah Eigler
Address: ████████ Encino, Ca 91316
Phone: 1-818-939-2057
E-mail: Eigler1@gmail.com

Any party may change its address by giving any other party written notice of its new address as herein provided.

8. Attorney Fees and Costs. If either Party commences legal proceedings to interpret or enforce the terms of this Agreement, the prevailing Party will be entitled to recover court costs and reasonable attorney fees.

9. Modifications. All modifications or amendments to this Agreement shall be effective only when reduced to writing and signed by both parties hereto.

10. Entire Agreement. This Agreement constitutes the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements.

11. Successors and Assigns. This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, that neither party may assign this Agreement or any rights or duties hereunder without the prior written consent of the other party (such consent to not be unreasonably withheld). Notwithstanding the foregoing, in the event of a change of control of Lender or Borrower, prior written consent shall not be required so such party provides the other party with written notice prior to the consummation of such change of control. For purposes of the foregoing, a "change of control" shall mean a transaction or series of related transactions in which a person or entity, or a group of affiliated (or otherwise related) persons or entities acquires from stockholders of the party shares representing more than fifty percent (50%) of the outstanding voting stock of the such party.

12. Severability of Provisions. Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

13. Counterpart Execution. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by telefacsimile, email or other electronic method of transmission shall be

equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by telefacsimile, email or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

14. Miscellaneous. Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders.

(The remainder of this page is intentionally blank. Signature page(s) to follow.)

IN WITNESS WHEREOF, each of the Parties hereto have executed this Agreement as of the date and year first written above.

LENDER                                          BORROWER:

Cody J. Schueler                                Four Squarebiz, LLC

By: _____         By: _____
        Cody J. Schueler, Individually                 Keith O. Crews
                                                                Its: Chairman


                                                        BORROWER:

                                                        Keith O. Crews


                                                        By: _____
                                                                Keith O. Crews, Individually


                                                        CO-SIGNER:

                                                        Micah Eigler


                                                        By: _____
                                                                Micah Eigler, Individually

SCHEDULE 1

GUARANTEE

KEITH O. CREWS, a (Married) individual ("Borrower"), whose address is ████████ ███ Kennesaw GA 30152; and MICAH EIGLER, a married individual, whose address is ████ ████████ Encino, CA 91316 ("Co-signer") (collectively "Guarantor") as material inducement to and in consideration of CODY J. SCHUELER, an individual whose mailing address is ████ ████████, Coeur d'Alene, Idaho 83814, U.S.A. ("Lender") entering into a BITCOIN LOAN AGREEMENT ("Agreement"), dated as of March 27, 2021, pursuant to which Lender lent five (5) Bitcoins to the Borrower, unconditionally and absolutely guarantees and promises, to and for the benefit of Lender, its successors and assigns, that Guarantor shall perform the provisions of the Agreement including, but not limited to, payment of all sums, charges, costs and expenses payable by Borrower and Co-Signer, its successors and assigns, under the Agreement and the full performance and observance of all of the covenants, terms, conditions and agreements therein provided to be performed and observed by Borrower and Co-signer, as well as any successors and assigns.

If Guarantor is more than one person, Guarantors' obligations are joint and several and are independent of Party's obligations under the Agreement and shall not be discharged except by payment to and receipt by Lender of all sums due under the Agreement. A separate action may be brought or prosecuted against any Guarantor whether the action is brought or prosecuted against any other Guarantor or Borrower, or all, or whether any other Guarantor or Borrower, or all, are joined in the action.

Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability under this Guarantee.

The provisions of the Agreement may be changed by agreement between Lender and Borrower, or their respective successors or assigns, at any time, or by course of conduct, without the consent of or without notice to Guarantor, including, without limitation, the obligations of Borrower, the term of the Agreement or the time for performance of any obligation thereunder, or the re-Agreement, compromise or settlement of any Agreement obligations. This Guarantee shall guarantee the performance of the Agreement as changed. Assignment of the Agreement (as permitted by the Agreement) shall not affect this Guarantee.

This Guarantee shall not be affected by Lender's failure or delay in enforcing any of its rights.

If Borrower defaults under the Agreement, Lender may proceed immediately against Guarantor or Borrower, or both, without prior notice to Guarantor, or Lender may enforce against Guarantor or Borrower, or both, any rights that it has under the Agreement or pursuant to applicable laws. If the Agreement terminates and Lender has any rights it may enforce against Borrower after termination, Lender may enforce those rights against Guarantor without giving previous notice to Borrower or Guarantor, or without making any demand on either of them. This Guarantee is a guarantee of payment and not of collection.

Guarantor waives the right to require Lender to (1) proceed against Borrower; (2) proceed against or exhaust any security that Lender holds from Borrower; or (3) pursue any other remedy in Lender's power. Guarantor waives any defense by reason of any disability of Borrower, including but not limited to any limitation on the liability or obligation of Borrower under the Agreement or

its estate in bankruptcy or of any remedy for the enforcement thereof, resulting from the operation of any present or future provision of the National Bankruptcy Act or other statute, or from the decision of any court, and waives any other defense based on the termination of Borrower's liability from any cause whatsoever. Until all of Borrower's obligations to Lender have been discharged in full, Guarantor has no right of subrogation against Borrower. Guarantor waives their right to enforce any remedies that Lender now has, or later may have against Borrower. Guarantor waives any right to participate in any security now or later held by Lender. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notices of acceptance of this Guarantee, and waives all notices of the existence, creation or incurring of new or additional obligations.

This Guarantee shall continue to be effective, or be reinstated, as the case may be, if at any time any whole or partial payment or performance of any obligation under the Agreement is or is sought to be rescinded or must otherwise be restored or returned by Lender upon the insolvency or bankruptcy of Borrower, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for Borrower or any substantial part of Borrower's property, or otherwise, all as though such payments and performance had not been made.

If Lender disposes of its interest in the Agreement, "Lender", as used in this Guarantee, shall mean Lender's successors.

If Lender is required to enforce Guarantor's obligations by legal proceedings, Guarantor shall pay to Lender all costs incurred, including, without limitation, reasonable attorneys' fees. Guarantor hereby waives trial by jury in any such legal proceedings.

If any term or provision of this Guarantee, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of this Guarantee, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Guarantee shall be valid and be enforced to the fullest extent permitted by law.

No waiver by Lender of any provision or right hereunder shall be implied from any omission by Lender to take any action on account of Lender's right under such provision. Any express waiver by Lender of any provision or right hereunder shall not act as a waiver of any provision or right elsewhere contained herein, and shall only act as a waiver as specifically expressed in said waiver, and only for the time and to the extent therein stated. One or more waivers by Lender shall not be construed as a waiver of a subsequent breach of the same provision or right.

The rights and remedies given to Lender by this Guarantee shall be deemed to be cumulative and not one of such rights and remedies shall be exclusive at law or in equity of the rights and remedies which Lender might otherwise have by virtue of a default under this Guarantee, and the exercise of one such right or remedy by Lender shall not impair Lender's standing to exercise any other rights or remedies.

All the terms, provisions and agreements of this Guarantee shall be construed liberally in favor of Lender, shall inure to the benefit of and be enforceable by Lender, its successors and assigns, and shall be binding upon Guarantor, and his executors, representatives, administrators and assigns. In the event of the death of the Guarantor, the obligation of the deceased Guarantor under this Guarantee shall continue in full force and effect with respect to estate of such deceased Guarantor.

This Guarantee shall be governed by and construed in accordance with the laws of the State of Idaho.

GUARANTOR:

Keith O. Crews

By: _____
    Keith O. Crews, Individually

GUARANTOR:

Micah Eigler

By: _____
    Micah Eigler, Individually

EXHIBIT A

(Attachments)

# BITCOIN LOAN AGREEMENT

THIS BITCOIN LOAN AGREEMENT (the "Agreement") is made this <u>26th</u> day of April, 2021 (the "Effective Date") by and between Four SquareBiz, LLC, a Wyoming limited liability company with a registered address at 3350 Riverwood Pkwy Suite 1900, Atlanta, GA 30339; Keith O. Crews, an individual residing at ███████████, Kennesaw, GA 30152 (collectively, the "Borrower"); Micah Eigler, and individual residing at ███████████, Encino, CA 91316, (the "Co-signer"); and Cody J. Schueler, an individual with a mailing address at ███████████ ███, Coeur d'Alene, Idaho 83814 (the "Lender"). The Borrower, Co-Signor, and Lender may be referred to herein individually as "Party" or collectively as "Parties."

## RECITALS

WHEREAS, the Lender has agreed to loan the Borrower three hundred sixty-three thousand dollars ($363,000.00) to be paid in Bitcoins ("BTC") for the Borrower to pay for the Funds Transfer Clearance Code ("FTCC") to transfer two hundred thirty million dollars ($230,000,000.00). Attached hereto and incorporated herein as Exhibit A is a true and accurate copy of the FTCC payment request from TrustFunds Private Bank;

WHEREAS, in exchange for the Lender transferring BTC to the Borrower, the Borrower will repay the Lender: seven hundred twenty-six thousand dollars ($726,000.00) to be paid in BTC (including any penalties or fees incurred);

WHEREAS, to secure the Lender's interest in the loaned funds, the Borrower and the Co-signer agree to personally guaranty the loan and all sums due and owing to the Lender;

WHEREAS, in consideration for Co-signer agreeing to secure the loan, Borrower agrees to compensate the Co-signer; and

WHEREAS, the Borrower and Co-signer shall be jointly and severally liable for all sums dues and owing to the Lender;

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, including without limitation, the mutual consent of the Parties hereto, the Borrower, Co-signer, and Lender the Parties, intending to be legally bound, hereby agree as follows:

1. Terms and Conditions.
   a. Lender's Performance. Upon dual execution of this Agreement, the Lender shall loan three hundred sixty-three thousand dollars ($363,000.00) in BTC to the Borrower. The Lender shall effectuate said loan by the funds directly to the Borrower's BTC wallet.

   i. The Borrower's BTC Wallet address is:

   ██████████████████ _____

b. Borrower's Performance. On or before 5:00 pm PST on Friday, April 30, 2021, the Borrower shall send the following to the Lender:
  i. Seven hundred twenty-six thousand dollars ($726,000.00), paid in BTC, to the Lender's BTC Wallet

  1. The Lender's BTC Wallet address is:

  2. ████████████████████████; and

  ii. To reimburse the Lender for the initial taxable event of converting Ethereum to BTC, the Borrower shall send the Lender 50,000 Dstem coins. It is understood and agreed that it is not yet certain which cryptocurrency wallet will be able to receive the Dstem Coins. Borrower expressly agrees to block and hold the Lender's Dstem Coins until such time as the Dstem Coin wallet is determined and is readily transferrable to the Lender's wallet.

  iii. The Lender shall also have the option to purchase an additional one hundred thousand (100,000) Dstem Coins at a valuation of two dollars and 50/100 ($2.50) per coin. Lender shall hold this exclusive right until such time as the Dstem Coin IEO. The Borrower shall provide the Lender with fourteen (14) days written notice of the Dstem Coin IEO. Failure to notify the Lender of the IEO shall result in the Borrower forfeiting one hundred thousand (100,000) Dstem Coins to the Lender.

c. Co-signer. The Co-signer acknowledges, has read, and understands the Agreement and agrees to accept full responsibility for the fulfillment of all the Terms and Conditions of the Agreement, including Section 1(b) and any other amounts due under this Agreement.

  i. The Co-signer shall remain responsible for the term of the Agreement.

d. Guarantee.

  i. Concurrently with its execution and delivery of this Agreement, Borrower and Co-signer shall deliver to Lender a guarantee from Guarantor in substantially the form of Schedule 1 attached hereto and made a part hereof. The Borrower and Co-signer shall personally guarantee all monetary terms of this Agreement, including any and all penalties that may accrue. The Guaranty is attached hereto as Schedule 1.

2. Breach.
  a. In the event the Borrower fails to perform under the terms of Section 1(b), the Borrower shall be automatically deemed in default. No notice is required.
  b. Each day the Borrower remains in default, a twenty percent (20%) interest penalty shall accrue on a daily basis. Said penalty shall be payable in BTC or as otherwise stipulated to by the Lender.

3. Representations and Warranties. The Borrower warrants and represents to the Lender on the date hereof that this Agreement has been duly and validly authorized, executed and

delivered on behalf of the Borrower and constitutes the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with its terms. The Borrower further warrants and represents that all funds are lien-free and of non-criminal and non-terrorist origin.

4. Remedies. Upon the occurrence and during the continuation of any Event of Default, the Lender may, at its option, (a) declare any outstanding sums hereunder immediately due and payable and/or (b) exercise all other rights and remedies available to the Lender herein, under applicable law against both the Borrower and the Co-signer jointly and severally. The Lender shall have the right to rescind any acceleration in payment of the principal amounts due hereunder for default, as aforesaid, if the Lender so elects, in which event this Agreement shall be construed, interpreted and enforced in the same manner as if the Lender had never elected to declare the unpaid principal balance hereof at once due and payable.

5. Rights and Remedies Cumulative. No delay or omission by the Lender in exercising any right or remedy herein shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies herein. All rights of the Lender stated herein are cumulative and in addition to all other rights provided by law.

6. Governing Law. This Agreement is governed by the laws of the State of Idaho, and any questions arising hereunder shall be construed or determined in accordance with such law. The venue for any lawsuit filed by either party related to the terms of this agreement shall be located exclusively in the federal courts of the state of Idaho, U.S.A.

7. Notices. Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by registered or certified mail (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a party may designate in accordance herewith), or telefacsimile, to the respective address set forth below:

Borrower:
Four SquareBiz, LLC
Name: Keith O. Crews, Chairman
Address: 3350 Riverwood Pkwy Suite 1900, Atlanta, GA 30339
Phone: 423-284-7854
E-mail: okcrews@4squarebiz.com

Borrower:
Name: Keith O. Crews, Individually
Address: ██████████████ ., Kennesaw, GA 30152
Phone: 423-284-7854
E-mail: okcrews@yahoo.com

Lender:
Name: Cody J. Schueler
Address: ███████████ , Coeur d'Alene, Idaho 83814, U.S.A.
Phone: +1-406-370-6178
E-mail: Cody@puremanagementsolutions.com

Co-signer:
Name: Micah Eigler
Address: ███████████, Encino, CA 91316
Phone: 1-818-939-2057
E-mail: Eigler1@gmail.com

Any party may change its address by giving any other party written notice of its new address as herein provided.

8.  **Attorney Fees and Costs.** If either Party commences legal proceedings to interpret or enforce the terms of this Agreement, the prevailing Party will be entitled to recover court costs and reasonable attorney fees.

9.  **Modifications.** All modifications or amendments to this Agreement shall be effective only when reduced to writing and signed by both parties hereto.

10. **Entire Agreement.** This Agreement constitutes the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements.

11. **Successors and Assigns.** This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, that neither party may assign this Agreement or any rights or duties hereunder without the prior written consent of the other party (such consent to not be unreasonably withheld). Notwithstanding the foregoing, in the event of a change of control of Lender or Borrower, prior written consent shall not be required so such party provides the other party with written notice prior to the consummation of such change of control. For purposes of the foregoing, a "change of control" shall mean a transaction or series of related transactions in which a person or entity, or a group of affiliated (or otherwise related) persons or entities acquires from stockholders of the party shares representing more than fifty percent (50%) of the outstanding voting stock of the such party.

12. **Severability of Provisions.** Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

13. **Counterpart Execution.** This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by telefacsimile, email or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by telefacsimile, email or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

DocuSign Envelope ID: 547ADEE6-96DF-440F-94B3-B8C3D8A17488

14. Miscellaneous. Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders.

(The remainder of this page is intentionally blank. Signature page(s) to follow.)

IN WITNESS WHEREOF, each of the Parties hereto have executed this Agreement as of the date and year first written above.

LENDER                                          BORROWER:

Cody J. Schueler                                Four Squarebiz, LLC


By: _____  4/26/2021       By: _____  4/26/2021

Cody J. Schueler, Individually                  Keith O. Crews
                                                Its: Chairman


                                                BORROWER:

                                                Keith O. Crews


                                                By: _____  4/26/2021

                                                Keith O. Crews, Individually


                                                CO-SIGNER:

                                                Micah Eigler


                                                By: _____  4/26/2021

                                                Micah Eigler, Individually

## SCHEDULE 1

## GUARANTEE

KEITH O. CREWS, a married individual ("Borrower"), whose address is ▇▇▇▇▇▇▇ ▇, Kennesaw, GA 30152 and MICAH EIGLER, a married individual, whose address is ▇▇ ▇▇▇▇▇▇, Encino, CA 91316 ("Co-signer") (collectively "Guarantor") as material inducement to and in consideration of CODY J. SCHUELER, an individual whose mailing address is ▇▇ ▇▇▇▇▇., Coeur d'Alene, Idaho 83814, U.S.A. ("Lender") entering into a BITCOIN LOAN AGREEMENT ("Agreement"), dated as of April 26th___, 2021, pursuant to which Lender lent three hundred sixty-three thousand dollars ($363,000.00) in Bitcoin to the Borrower, unconditionally and absolutely guarantees and promises, to and for the benefit of Lender, its successors and assigns, that Guarantor shall perform the provisions of the Agreement including, but not limited to, payment of all sums, charges, costs and expenses payable by Borrower and Co-Signer, its successors and assigns, under the Agreement and the full performance and observance of all of the covenants, terms, conditions and agreements therein provided to be performed and observed by Borrower and Co-signer, as well as any successors and assigns.

If Guarantor is more than one person, Guarantors' obligations are joint and several and are independent of Party's obligations under the Agreement and shall not be discharged except by payment to and receipt by Lender of all sums due under the Agreement. A separate action may be brought or prosecuted against any Guarantor whether the action is brought or prosecuted against any other Guarantor or Borrower, or all, or whether any other Guarantor or Borrower, or all, are joined in the action.

Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability under this Guarantee.

The provisions of the Agreement may be changed by agreement between Lender and Borrower, or their respective successors or assigns, at any time, or by course of conduct, without the consent of or without notice to Guarantor, including, without limitation, the obligations of Borrower, the term of the Agreement or the time for performance of any obligation thereunder, or the re-Agreement, compromise or settlement of any Agreement obligations. This Guarantee shall guarantee the performance of the Agreement as changed. Assignment of the Agreement (as permitted by the Agreement) shall not affect this Guarantee.

This Guarantee shall not be affected by Lender's failure or delay in enforcing any of its rights.

If Borrower defaults under the Agreement, Lender may proceed immediately against Guarantor or Borrower, or both, without prior notice to Guarantor, or Lender may enforce against Guarantor or Borrower, or both, any rights that it has under the Agreement or pursuant to applicable laws. If the Agreement terminates and Lender has any rights it may enforce against Borrower after termination, Lender may enforce those rights against Guarantor without giving previous notice to Borrower or Guarantor, or without making any demand on either of them. This Guarantee is a guarantee of payment and not of collection.

Guarantor waives the right to require Lender to (1) proceed against Borrower; (2) proceed against or exhaust any security that Lender holds from Borrower; or (3) pursue any other remedy in Lender's power. Guarantor waives any defense by reason of any disability of Borrower, including but not limited to any limitation on the liability or obligation of Borrower under the Agreement or

DocuSign Envelope ID: 547ADEE6-96DE-440E-84B3-B6C3D8A17488

its estate in bankruptcy or of any remedy for the enforcement thereof, resulting from the operation of any present or future provision of the National Bankruptcy Act or other statute, or from the decision of any court, and waives any other defense based on the termination of Borrower's liability from any cause whatsoever. Until all of Borrower's obligations to Lender have been discharged in full, Guarantor has no right of subrogation against Borrower. Guarantor waives their right to enforce any remedies that Lender now has, or later may have against Borrower. Guarantor waives any right to participate in any security now or later held by Lender. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notices of acceptance of this Guarantee, and waives all notices of the existence, creation or incurring of new or additional obligations.

This Guarantee shall continue to be effective, or be reinstated, as the case may be, if at any time any whole or partial payment or performance of any obligation under the Agreement is or is sought to be rescinded or must otherwise be restored or returned by Lender upon the insolvency or bankruptcy of Borrower, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for Borrower or any substantial part of Borrower's property, or otherwise, all as though such payments and performance had not been made.

If Lender disposes of its interest in the Agreement, "Lender", as used in this Guarantee, shall mean Lender's successors.

If Lender is required to enforce Guarantor's obligations by legal proceedings, Guarantor shall pay to Lender all costs incurred, including, without limitation, reasonable attorneys' fees. Guarantor hereby waives trial by jury in any such legal proceedings.

If any term or provision of this Guarantee, or the application thereof to any person or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of this Guarantee, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Guarantee shall be valid and be enforced to the fullest extent permitted by law.

No waiver by Lender of any provision or right hereunder shall be implied from any omission by Lender to take any action on account of Lender's right under such provision. Any express waiver by Lender of any provision or right hereunder shall not act as a waiver of any provision or right elsewhere contained herein, and shall only act as a waiver as specifically expressed in said waiver, and only for the time and to the extent therein stated. One or more waivers by Lender shall not be construed as a waiver of a subsequent breach of the same provision or right.

The rights and remedies given to Lender by this Guarantee shall be deemed to be cumulative and not one of such rights and remedies shall be exclusive at law or in equity of the rights and remedies which Lender might otherwise have by virtue of a default under this Guarantee, and the exercise of one such right or remedy by Lender shall not impair Lender's standing to exercise any other rights or remedies.

All the terms, provisions and agreements of this Guarantee shall be construed liberally in favor of Lender, shall inure to the benefit of and be enforceable by Lender, its successors and assigns, and shall be binding upon Guarantor, and his executors, representatives, administrators and assigns. In the event of the death of the Guarantor, the obligation of the deceased Guarantor under this Guarantee shall continue in full force and effect with respect to estate of such deceased Guarantor.

This Guarantee shall be governed by and construed in accordance with the laws of the State of Idaho.

GUARANTOR:

Keith O. Crews

By: _____   4/26/2021

Keith O. Crews, Individually

GUARANTOR:

Micah Eigler

By: _____   4/26/2021

Micah Eigler, Individually

DocuSign Envelope ID: 547ADEE6-96DE-440E-94B7-B9C3D8A17488

EXHIBIT A

(Attachments)



Dear Keith Crews,

Thank you for choosing Trust Funds Private Bank. Find below your
Digital Investment account information.

ACCOUNT NAME: Keith Crews
ACCOUNT NUMBER: ███████
ACCOUNT TYPE: Digital Investment
TRANSACTION NUMBER: 00126

Your Transfer request of $230,000,000.00 is being processed.
Kindly proceed to pay your Funds Transfer Clearance Code (FTCC)
to complete your withdrawal.

BENEFICIARY'S INFORMATION.

BANK NAME: Ghana International Bank PLC
ACCOUNT NAME: Mega Bank Gambia Ltd
ACCOUNT NUMBER: ███████
ROUTING NUMBER: 60-92-63
IBAN: ████████████

Your Funds are currently processing and as soon as the FTC code
is obtained your funds will be deposited in the beneficiary's
account.

Your FTC code will be given to you after all necessary FTC
payments have been paid.

==============================================================
Your transfer request of $230,000,000.00 incurred a total of
$362,965.56 as FTCC
==============================================================
Kindly Make FTCC payment below.

BITCOIN WALLET: ████████████████
Amount: 362,965.56 USD

For further inquiries on our Internet Banking facilities, send
an email to info@trustfundsprivatebank.com


Thank you for banking with us,
Internet Banking Operations
TrustFunds Private Bank