Andrew M. Wagley, ISB #10277
Samir Dizdarevic-Miller, ISB #11471
ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 W. Riverside Avenue, Suite 210
Spokane, WA 99201
Phone: 509-747-9100
Fax:    509-623-1439
Email:  awagley@ettermcmahon.com
Email:  samir@ettermcmahon.com
*Attorneys for Plaintiff Cody J. Schueler*

## UNITED STATES DISTRICT COURT
### DISTRICT OF IDAHO (NORTHERN DIVISION)

| | |
|---|---|
| CODY J. SCHUELER, an individual,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>FOUR SQUAREBIZ, LLC, a Wyoming limited liability company, KEITH O. CREWS, an individual and the associated marital community, MICAH EIGLER, an individual and the associated marital community, and JOHN AND JANE DOES 1-10,<br><br>　　　　　Defendants. | Case No. 2:22-cv-00389-DCN<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT** |

COMES NOW, Plaintiff CODY J. SCHUELER, by and through his attorneys of record, and hereby respectfully submits the following Memorandum in Support of Plaintiff's Motion for Default Judgment against Defendants Four SquareBiz, LLC ("Four SquareBiz") and Keith O. Crews, individually and the associated marital community comprised thereof ("Defendant Crews"). As indicated further below, Plaintiff does not seek Default Judgment against Defendant Micah Eigler ("Defendant Eigler") based upon Defendant's Chapter 7 Bankruptcy.

Despite this litigation pending for 11 months, Defendants have failed to formally appear, obtain counsel, or demonstrate a meaningful attempt to defend this lawsuit. As such, Default Judgment in the amount of $1,199,809.31, comprised of $938,967.55 in principal and $260,841.76 in reasonable interest, is appropriate against the remaining Defendants.

## BACKGROUND

This is a commercial lawsuit stemming from the breach of three Bitcoin Loan Agreements executed by Defendants, along with accompanying Personal Guarantees executed by Defendant Crews and Eigler. (*See* ECF No. 1.) Plaintiff Cody J. Schueler filed this lawsuit on September 12, 2022. (*See id.*)

As indicated in the Complaint, Defendants "approached Mr. Schueler in early 2021 regarding the opportunity to invest in the funding and launch of 'Dstem Coin,' a purportedly new decentralized, blockchain cryptocurrency." (ECF No. 1 at 4.) Plaintiff knew Defendants Crews and Eigler "from previous business transactions" and Defendant Crews "purported to be the Chief Executive Officer (CEO) and Chairman of Four SquareBiz, LLC." (*Id.*) Thereafter, Defendants presented Mr. Schueler various documents regarding "Dstem Coin," including "PowerPoint presentations," industry "White Paper," and "a Four SquareBiz 'Co-Venture Equity Agreement' for the funding and launch of Dstem Coin." (*Id.*)

Based upon such inducement, the parties entered into three "Bitcoin Loan Agreements," whereby Mr. Schueler served as the Lender and Defendants Crews and Four SquareBiz were Borrowers. (*See* ECF No. 1-2 at 1-63.) In addition, Defendants Crews and Eigler executed unconditional and absolute Personal Guarantees, wherein they contractually agreed to perform

the duties, perform the obligations, and make payments in the event of nonperformance under the three Bitcoin Loan Agreements. (*See id*.)

The first Bitcoin Loan Agreement was executed on March 27, 2021. (*See* ECF No. 1 at 4-5.) "The express purpose of the first Bitcoin Loan Agreement was for 'Borrower to secure equity funding through Trust Funds Capital, Ltd and serviced through https://bittrei.io' for the launch and funding of Dstem Coin." (*Id*. at 5.) "As part of the inducement to enter into the first Bitcoin Loan Agreement, Defendants presented Mr. Schueler with purported documentation from 'Trust Funds Capital,'" which included "a 'Digital Private Equity Funding' loan as part of the Dstem Coin funding process." (*Id*. at 5, 31-37.)

Pursuant to the first Bitcoin Loan Agreement, Mr. Schueler disbursed five Bitcoins to Defendants on March 27, 2021 via the BTC address referenced in the Agreement. (Schueler Decl. at ¶ 5.) At that time, one Bitcoin had a market value of approximately $55,973.51. (*See id*.) Defendants never performed under the first Bitcoin Loan Agreement and never repaid Mr. Schueler the $279,867.55 principal loaned. (*Id*. at ¶ 6; ECF No. 1 at 6.)

The second Bitcoin Loan Agreement was executed on April 26, 2021. (ECF No. 1 at 6.) "The express purpose of the second Bitcoin Loan Agreement is 'for the Borrower to pay for the Funds Transfer Clearance Code ('FTCC') to transfer two hundred thirty million dollars ($230,000,000.00)' associated with the funding and launch of Dstem Coin." (*Id*.) "As part of the inducement to enter into this Agreement, Defendants presented Mr. Schueler with purported documentation from 'Trust Funds Private banking,'" which "requested Mr. Crews 'proceed to pay your Funds Transfer Clearance Code (FTCC) to complete your withdrawal' of $230,000,000 as part of the Dstem Coin funding process." (*Id*. at 6 and 49.)

Memorandum in Support of Motion
for Default Judgment—Page 3

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

Under the second Bitcoin Loan Agreement, Mr. Schueler disbursed $363,000 in Bitcoin to Defendants on April 26, 2021 via the BTC Wallet address referenced in the Agreement. (Schueler Decl. at ¶ 7.)   Defendants never performed under the second Bitcoin Loan Agreement and never repaid Mr. Schueler the $363,000 in principal loaned.  (*Id*. at ¶ 8.)

The third Bitcoin Loan Agreement was entered into on April 29, 2021.  (ECF No. 1 at 7.)  "The express purpose of the third Bitcoin Loan Agreement was for 'the Borrower to pay for HMRC Tax Clearance Pin ('TCP') to pay taxes on the transfer of Borrower's loan fund of two hundred million thirty dollars ($230,000,000.00)' associated with the funding of Dstem Coin."  (*Id*. at 7-8.)  "As part of the inducement to enter into this Agreement, Defendants presented Mr. Schueler with purported documentation of a 'FTCC payment request from TrustFunds Private Bank.'"  (*Id*. at 8.)

Pursuant to the third Bitcoin Loan Agreement, Mr. Schueler disbursed $296,100 in Bitcoin to Defendants on April 29, 2021 via the BTC Wallet address referenced in the Agreement.  (Schueler Decl. at ¶ 9.)  Defendants never performed under the third Bitcoin Loan Agreement and never repaid Mr. Schueler the $296,100 principal loaned.  (*Id*. at ¶ 10.)

All three Bitcoin Loan Agreements expressly indicate that they are governed by Idaho law:

> 6. Governing Law.  This Agreement is governed by the laws of the State of Idaho, and any questions arising hereunder shall be construed or determined in accordance with such law.

(*See* ECF No. 1 at 23, 41, 53, 64, and 74; ECF No. 1-2 at 4, 22, 34, 45, and 55.)  The Personal Guarantees also indicate that they "shall be governed by and construed in accordance with the laws of the State of Idaho."  (ECF No. 1 at 29, 47, and 59.)

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

As indicated in the Complaint, the documentation from "Trust Funds Capital," "Trust Funds Private banking," and "TrustFunds Private Bank" Defendants used to induce Mr. Schueler to enter into the three Bitcoin Loan Agreements were "false, fabricated, and fraudulent." (ECF No. 1 at 5, 7, and 8.) The information associated with these purported entities on the loan documents "is invalid, comes back to different entities, or otherwise is not associated with a legitimate financial institution." (*Id.*) Furthermore, "[n]one of these names are listed with the Office of the Comptroller of the Currency, Federal Deposit Insurance Corporation (FDIC), Federal Reserve National Information Center, or any pertinent Secretary of State business entity searches." (*Id.* at 10.) The Complaint further alleges that "Dstem Coin is not a legitimate cryptocurrency investment." (*Id.*) In this vein, Plaintiff alleged that "[a]ll of the information and documentation regarding Dstem Coin was created, fabricated, and falsified by Defendants to defraud potential investors." (*Id.*)

The Complaint alleges that "[p]rior to filing this lawsuit, Mr. Schueler made multiple, good faith attempts to negotiate a resolution of this matter with Defendants and repayment of the funds loaned under the three Bitcoin Loan Agreements." (ECF No. 1 at 9.) Additionally, "Defendants have continually promised repayment to Mr. Schueler, but have indicated delays associated with other projects." (*Id.*) This conduct continued following the initiation of litigation. The Clerk entered Defaults against Four SquareBiz and Defendant Crews on January 26, 2023 and Defendant Eigler on March 6, 2023. (ECF No. 22; ECF No. 27.) On April 4, 2023, Defendant Eigler filed Chapter 7 Bankruptcy, resulting in an automatic stay against Defendant Eigler. (*See* ECF No. 28.) Plaintiff respectfully moves for Default Judgment against remaining Defendants Four SquareBiz and Crews, jointly and severally.

Memorandum in Support of Motion
for Default Judgment—Page 5

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## POINTS & AUTHORITIES

Once default has been entered by the Clerk, it is within the Court's discretion to grant a default judgment. *See* Fed. R. Civ. P. 55(b)(2). Before entering default judgment, the Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2). "When considering a motion for default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *J & J Sports Prods., Inc. v. Aiken*, 2022 WL 3213094, at *1 (D. Idaho 2022)[1] (quoting *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)). The Court must analyze: (1) whether a default judgment is warranted, and (2) the appropriate amount of damages. *See id.*[2]

### A. Despite Defendant Eigler's Bankruptcy Stay, Plaintiff May Obtain Default Judgment Against the Remaining Defendants.

As an initial matter, Plaintiff may proceed against Defendants Four SquareBiz and Crews, despite Defendant Eigler's Chapter 7 Bankruptcy and associated automatic stay pursuant to 11 U.S.C. § 362(a). There is no risk of inconsistent results as all Defendants were in Default prior to Defendant Eigler's Chapter 7 Bankruptcy.

First, the automatic stay pursuant to 11 U.S.C. § 362(a) only applies to the debtor in bankruptcy (*i.e.*, Defendant Eigler). Pursuant to the Ninth Circuit:

---

[1] Unpublished, out-of-jurisdiction, and secondary sources offered for nonbinding, persuasive purposes only.
[2] The Court must also "confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1091 (N.D. Cal. 2014). These requirements were established in Plaintiff's previous Motions for Default.

Memorandum in Support of Motion
for Default Judgment—Page 6

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

As a general rule, '[t]he automatic stay of section 362(a) <u>protects only the debtor, property of the debtor or property of the estate</u>. <u>It does not protect non-debtor parties or their property</u>. Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor."

*In re Chugach Forest Products, Inc.*, 23 F.3d 241, 246 (9th Cir. 1994) (internal quotations omitted). Although the bankruptcy stay may be extended to non-debtors, the Bankruptcy Court—and *not* the District Court—"first needs to extend the automatic stay under its equity jurisdiction" predicated upon the "unusual need to take this action to protect the administration of the bankruptcy estate." *Boucher v. Shaw*, 572 F.3d 1087, 1093 n. 3 (9th Cir. 2009). Simply put, Defendant Eigler's bankruptcy stay does not extend to Defendant Four SquareBiz and/or Defendant Crews.

Second, there is no risk of inconsistent judgments under Fed. R. Civ. P. 54(b) as all Defendants are in Default, Defendant Eigler is in Chapter 7 Bankruptcy, and Default Judgment is warranted against Defendants Four SquareBiz and Crews. "[U]nder certain circumstances, the court should not enter a default judgment against one or more defendants which is, or likely to be, <u>inconsistent with judgment on the merits in favor of the remaining answering defendants</u>." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (citing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552 (1872)). However, this should not be a concern in the situation at hand as "<u>these policy considerations 'do not apply' where 'default has been entered against all [d]efendants</u>.'" *Phillips 66 Co. v. California Pride, Inc.*, 2017 WL 2875736, at *5 (E.D. Cal. 2017) (quoting *Travelers Cas. & Sur. Co. of Am. v. Evans*, 2012 WL 4468422, at *1 (E.D. Cal. 2012)). In other words, there is

Memorandum in Support of Motion
for Default Judgment—Page 7

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

no risk of inconsistent results when all defendants have been put in default, have not defended, and have not disputed the merits.  *See id.*

Multiple District Courts within the Ninth Circuit have entered default judgment against remaining defendant(s) after a co-defendant enters bankruptcy.  *See, e.g., Phillips 66 Co.*, 2017 WL 2875736, at *6 ("notwithstanding the automatic stay as to the Individual Defendants," the court "may proceed against only Defendant California Pride, Inc"); *Evans*, 2012 WL 4468422, at *1 ("there is no risk of inconsistent results among" the remaining defendants and there is "no just reason to delay these proceedings"); *S. California Breakfast Clubs, Inc. v. Breakfast Club Am., LLC*, 2008 WL 4790523 (S.D. Cal. 2008); (*Stewart Title Guar. Co. v. 2485 Calle Del Oro, LLC*, 2018 WL 3222610 (S.D. Cal. 2018).  Plaintiff is entitled to seek this Default Judgment against the remaining Defendants.  *See id.*

## B.  <u>Plaintiff is Entitled to Entry of Default Judgment Against Remaining Defendants.</u>

In exercising its discretion to enter a default judgment, the Court may consider several factors, including the "*Eitel* Factors":

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy . . . favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The totality of the *Eitel* Factors warrant entry of the requested Default Judgment.  *See id.*

### 1.  *Possibility of Prejudice to Plaintiff.*

The first *Eitel* Factor is "the possibility of prejudice to the plaintiff."  782 F.2d at 1472. This factor is met if the defaulting defendants are not participating in this litigation,

Memorandum in Support of Motion
for Default Judgment—Page 8

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

potentially leaving Plaintiff without a remedy and "denied the right to judicial resolution of the claims presented." *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005); *accord Weese v. Lusso Auto LLC*, 2023 WL 244501, at *2 (D. Ariz. 2023) (noting that "Plaintiff will likely be without other recourse for recovery" if default judgment not granted). As Plaintiff has no apparent legal remedy nor recourse against Defendants outside of this litigation, this factor supports the requested Default Judgment. *See id.*

### 2. Merits of Plaintiff's Substantive Claims, and
### 3. Sufficiency of the Complaint.

The second and third *Eitel* Factors are "(2) the merits of plaintiff's substantive claim[s]" and "(3) the sufficiency of the complaint." 782 F.2d at 1471. "The second and third factors dealing with sufficiency of the complaint and the merits of plaintiff's claims—perhaps the most important among the *Eitel* factors—are usually considered together." *Acosta v. Pindernation Holdings LLC*, 2023 WL 3951222, at *3 (D. Ariz. 2023). Under this analysis, "'the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true.'" *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1091 (N.D. Cal. 2014) (quoting *Pepsico, Inc. v. Cal. Sec. Cans,* 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002)); *accord Weese*, 2023 WL 244501, at *2. The Court must consider "whether the plaintiff has stated a claim on which it may recover." *Ariz. Bd. of Regents v. Doe*, 555 F. Supp. 3d 805, 816 (D. Ariz. 2021).

When sitting in diversity, the Court considers the substantive law of the forum state in determining whether Plaintiff has stated a claim. *See, e.g., Yelp, Inc*., 70 F. Supp. 3d at 1098-99. The Complaint adequately pleads the following causes of action under Idaho law:

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

i. Breach of Contract—Both Remaining Defendants.

Under Idaho law, "[t]he elements for a claim for breach of contract are: (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (Idaho 2013). In general, "a party who signs a written contract is presumed to know its contents and to assent to them." *N. Wind Constr. Servs., LLC v. Campos EPC, LLC*, 2023 WL 196618, at *7 (D. Idaho 2023). Breach occurs if performance is not tendered when required. *See Ervin Const. Co. v. Van Orden*, 874 P.2d 506, 510 (Idaho 1993). Damages must be proven "with reasonable certainty," which does not require "absolute assurance nor mathematical exactitude." *N. Wind Constr. Servs., LLC*, 2023 WL 196618, at *7.

In addition to the facts recited above, Plaintiff's First Cause of Action (Breach of Contract) alleges, in pertinent part:

> 4.3 The three Bitcoin Loan Agreements by and between Plaintiff and Defendants constituted valid contracts under the laws of the State of Idaho.
>
> 4.4 A breach of contract is non-performance of any contractual duty, absent legal justification, at the time performance is required. Defendants failed to repay Plaintiff and perform other duties in accordance with the Agreements, without legal excuse, constituting a clear breach of contract.
>
> 4.5 At all times material to the Agreements, Plaintiff performed all of his requisite contractual duties and has satisfied all conditions precedent.
>
> 4.6 As a result of the Defendants' breach of said Agreements, Plaintiff has suffered damages in an amount to be proven fully at the time of trial, including but not limited to, the principal amounts legally due under the terms of said Agreements, plus reasonable interest and attorneys' fees.

(ECF No. 1 at 11.) Plaintiff has alleged a valid breach of contract claim.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

ii.  Breach of Personal Guarantees—Defendant Crews.

Pursuant to Idaho law, "[a] guarantee is an undertaking or promise on the part of the guarantor which is collateral to a primary or principal obligation and binds the guarantor to performance in the event of non-performance of the principal obligor." *Indus. Inv. Corp. v. Rocca*, 596 P.2d 100, 104 (Idaho 1979).   Additionally, "[a]n unconditional guaranty is a promise by the guarantor to pay the debt or perform the obligation upon default without requiring the secured party to first exhaust its remedies against the debtor." *CIT Fin. Servs. v. Herb's Indoor RV Ctr., Inc.*, 795 P.2d 890, 892 (Idaho Ct. App. 1990).   A breach of personal guaranty is analyzed the same as a breach of contract claim.   *See id.* ("Plain and unambiguous terms dictate the intent of the parties and the obligations guaranteed.").

In relation to the unconditional and absolute Personal Guarantees, Plaintiff's Second Cause of Action alleges, in pertinent part:

> 5.3  Defendants Crews and Eigler entered into Personal Guarantees with Plaintiff, wherein they contractually agreed and warranted to perform the duties, obligations, and make payments in the event of nonperformance of Defendants under the three Bitcoin Loan Agreements.   These Personal Guarantees are valid contracts under Idaho law.
>
> 5.4  Defendants Crews and Eigler breached these Personal Guarantees by failing to pay Plaintiff and perform other duties in accordance with the Personal Guarantees, without legal excuse, when performance was due.
>
> 5.5  At all times material to the Personal Guarantees, Plaintiff performed all of his requisite contractual duties and has satisfied all conditions precedent.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

> 5.6   As a result of the Defendants' breach of said Personal Guarantees, Plaintiff has suffered damages in an amount to be proven fully at the time of trial, including but not limited to, the economic amounts legally due under the terms of said Agreements, plus attorneys' fees and costs.

(ECF No. 1 at 12-13.)  The Complaint alleges a meritorious breach of guarantees claim.

### iii.   Breach of Good Faith and Fair Dealing—Both Remaining Defendants.

Under Idaho law, "the implied covenant of good faith and fair dealing 'requires that the parties perform, in good faith, the obligations imposed by their agreement.'"  *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2022 WL 3346296, at *9 (D. Idaho 2022) (quoting *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000)).  In turn, "'[t]he implied covenant of good faith is violated when a party 'violates, nullifies or significantly impairs any benefit of the . . . contract.'"  *VNS Fed. Servs., LLC v. Portsmouth Mission All., LLC*, 2020 WL 4227553, at *4 (D. Idaho 2020) (quoting *Jones v. Micron Tech., Inc.*, 923 P.2d 486, 492 (Idaho Ct. App. 1996)).

Plaintiff's Third Cause of Action (Breach of Good Faith and Fair Dealing) alleges, in pertinent part:

> 6.3.   As indicated herein, the parties entered into valid contracts in the form of the three Bitcoin Loan Agreements.  These Agreements contain an implied covenant of good faith and fair dealing.
>
> 6.4.   Defendants breached not only the express terms of these Agreements, but also the implied covenant of good faith and fair dealing by virtue of delaying performance, falsely promising to provide Plaintiff with payment,

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

continually negotiating a resolution in bad faith, and other facts as will be
established fully at the time of trial.

6.5. As a direct and proximate result of the Defendants' breach of the implied
duty of good faith and fair dealing, Plaintiff has suffered damages in an
amount to be proven fully at the time of trial.

(ECF No. 1 at 13-14.)  Plaintiff has stated a meritorious claim.

iv.  Conversion—Both Remaining Defendants.

"Conversion is the act of wrongfully asserting dominion over another's personal property in denial of or inconsistent with the owner's rights therein."  *In re Parkinson Seed Farm, Inc.*, 640 B.R. 218, 263 (Bankr. D. Idaho 2022).  Conversion requires three elements: "(1) that Defendants wrongfully gained dominion of property; (2) that the property was owned or possessed by Plaintiff at the time Defendants gained dominion; and (3) the property in question is personal property."  *In re Parkinson Seed Farm*, 640 B.R. at 263.  Bitcoin constitutes "personal property" for a conversion claim.  *See Howard v. Selene Fin.*, 2019 WL 1495254, at *4 (D. Idaho 2019) ("the $100,400 check is personal property"); *accord Warm Springs Properties, Inc. v. Andora Villa, Inc.*, 526 P.2d 1106, 1108 (Idaho 1974) ("Normally conversion for misappropriation of money does not lie <u>unless it can be described or identified as a specific chattel</u>."); *see also BDI Capital, LLC v. Bulbul Investments LLC*, 446 F. Supp. 3d 1127, 1137 (N.D. Ga. 2020) ("<u>bitcoins are sufficiently identifiable to be considered 'specific intangible property' subject to an action for conversion</u>").

Plaintiff's Fourth Cause of Action (Conversion) alleges, in pertinent part:

Memorandum in Support of Motion
for Default Judgment—Page 13

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

7.3. As indicated above, Defendants have wrongfully asserted dominion and control over the property of Plaintiff, to wit the funds loaned by Plaintiff to Defendants under the three Bitcoin Loan Agreement.

7.4. As indicated above, Plaintiff has demanded return of the funds loaned to the Defendants, to no avail.

7.5. As a direct and proximate result of Defendants' wrongful conversion, Plaintiff has suffered damages in an amount to be proven fully at the time of trial, including the principal loaned under the Agreements.

(ECF No. 1 at 14-15.)  The Complaint alleges a valid conversion claim.

    v.  Fraud—Both Remaining Defendants.

Pursuant to Idaho law, common law fraud requires a claimant to establish the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*LaKamp v. Runft*, 2023 WL 2333397, at *9 (D. Idaho 2023) (quoting *G & M Farms v. Funk Irrigation Co.*, 808 P.2d 851, 855 (Idaho 1991)).  For purposes of a fraud claim, "'[m]ateriality refers to the importance of the misrepresentation in determining the plaintiff's course of action.'"  *In re Parkinson Seed Farm*, 640 B.R. at 260 (quoting *Watts v. Krebs*, 962 P.2d 387, 390 (Idaho 1998)).  In turn, "false representations made during negotiations concerning the condition of the subject matter of the contract can support a finding of fraud in the inducement."  *Budget Truck Sales, LLC v. Tilley*, 419 P.3d 1139, 1145 (Idaho 2018).

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

The heightened "particularity" pleading standard of Fed. R. Civ. P. 9(b) requires "the plaintiff to allege in his complaint 'the who, what, where, when, and how' of the alleged fraudulent conduct." *Miesen v. Connie Taylor Henderson*, 2017 WL 1458191, at *11 (D. Idaho 2017) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Importantly, a default judgment for fraud is not as easily dischargeable in bankruptcy. *See* 11 U.S.C. § 523(a)(2)(A) (debtor's liability not discharged in bankruptcy for assets obtained by "false pretenses, a false representation, or actual fraud"); *accord In re Sabban*, 600 F.3d 1219, 1222 (9th Cir. 2010) (setting forth elements of "non-dischargeability under § 523(a)(2)(A)").

As indicated above, the unanswered Complaint alleges that the documentation from "Trust Funds Capital," "Trust Funds Private banking," and "TrustFunds Private Bank" that were attached to the Bitcoin Loan Agreements and used to induce Plaintiff's entry therein were "false, fabricated, and fraudulent." (ECF No. 1 at 5, 7, and 8.) The Complaint also alleges that, in addition to these fabricated financial entities, "Dstem Coin is not a legitimate cryptocurrency investment." (*Id.* at 10.) Further, Plaintiff's reliance upon the false statements was reasonable as he knew Defendants Crews and Eigler "from previous business transactions" and Defendant Crews "purported to be the Chief Executive Officer (CEO) and Chairman of Four SquareBiz, LLC." (*Id.* at 4.) As such, Plaintiff's Fifth Cause of Action (Fraud) alleges, in pertinent part:

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

8.3. As indicated herein, Defendants made multiple false statements or representations pertaining to the inducement of the Bitcoin Loan Agreement and Personal Guarantees. These false representations include, but are not limited to, the viability of the Dstem Coin investment, the purpose(s) of the Bitcoin Loan Agreements, the existence of issues with "Trust Funds Private Bank," and Defendants intent to repay the principal amounts loaned under the Agreements.

8.4. Such false statements, representations, and/or omissions were material as they formed the basis, consideration, and purpose for Mr. Schueler to enter into the three Bitcoin Loan Agreements, loan funds thereunder, and transfer Bitcoin to Defendants.

8.5. At all times material hereto, Defendants were aware of the falsity of such statements, representations, and/or omissions based upon their creation of the fraudulent Dstem Coin scheme that resulted in the Agreements. Defendants intended that Mr. Schueler rely upon such misrepresentations to transfer Bitcoin funds to Defendants.

8.6. Plaintiff was ignorant in the falsity of the statements, representations, and/or omissions herein. Plaintiff justifiably relied upon the same in order to enter into the three Bitcoin Loan Agreements, Personal Guarantees, and associated business transactions with Defendants.

8.7. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff has suffered damages in an amount to be proven fully at the time of trial, including the principal loaned under the Agreements.

(ECF No. 1 at 15-16.)  Plaintiff has pled a meritorious fraud claim under the heightened pleading standard of Fed. R. Civ. P. 9(b).

ETTER, M<sup>C</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

vi.  Civil Conspiracy—Both Remaining Defendants.

Pursuant to Idaho law, "[a] civil conspiracy that gives rise to legal remedies exists only if there is an <u>agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner</u>." *Mannos v. Moss*, 155 P.3d 1166, 1174 (Idaho 2007).  For purposes of a conspiracy to defraud, "there must be some showing of specific evidence of a plan or agreement to defraud to demonstrate the pendency of the conspiracy at the time the alleged fraud occurred." *Mannos*, 155 P.3d at 1174.

Here, the Complaint alleges that Defendants acted in concert by jointly inducing Plaintiff to enter into the Bitcoin Loan Agreements and disburse funds.  The loan documents speak for themselves and establish the requisite conspiracy agreement amongst Defendants. As such, Plaintiff's Sixth Cause of Action (Civil Conspiracy) alleges, in pertinent part:

> 9.3.  As indicated herein, Defendants entered into an agreement / conspiracy to cause Plaintiff to loan substantial funds under the three Bitcoin Loan Agreements and associated Personal Guarantees.
>
> 9.4.  The purpose of the conspiracy was to accomplish an unlawful objective, to wit to defraud, steal, and wrongfully convert said funds from Plaintiff.
>
> 9.5.  In addition thereto and in the alternative, the conspiracy was accomplished in an unlawful manner, to wit Defendants executed said Agreements with no actual intent to ever repay Plaintiff the principal thereof and other acts as alleged herein.
>
> 9.6.  As a direct and proximate result of Defendants' civil conspiracy, Plaintiff has suffered damages in an amount to be proven fully at the time of trial, including the principal loaned under the Agreements.

(ECF No. 1 at 17.)  Plaintiff has alleged a meritorious civil conspiracy claim.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

vii.  Implication of Marital Community—Defendant Crews.

In addition to Plaintiff's substantive claims, the Complaint alleges that Defendant Crews is married and the caption names "the associated marital community."  (*See* ECF No. 1.)  The Bitcoin Loan Agreements provide that "[t]his Agreement is governed by the laws of the State of Idaho."  (ECF No. 1 at 23, 41, and 53.)  The Personal Guarantees likewise provide that "[t]his Guarantee shall be governed by and construed in accordance with the laws of the State of Idaho."  (ECF No. 1 at 29, 47, and 59.)  Both the Bitcoin Loan Agreements and Personal Guarantees expressly apply Idaho law, and therefore, invoke Idaho community property law.  (*See id.*)

For purposes of a choice of law analysis, "[f]ederal courts sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling substantive law.'"  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)).  Idaho follows the choice of law provisions of the *Restatement (Second) of Conflict of Laws* and its progeny.  *See, e.g., Stimpson v. Midland Credit Mgmt., Inc.*, 347 F. Supp. 3d 538, 546 (D. Idaho 2018), *aff'd*, 944 F.3d 1190 (9th Cir. 2019).  Pursuant to the *Restatement (Second) of Conflict of Laws* § 187 (1971), various courts have upheld choice of law provisions in relation to the implication of community property.  *See First-Citizens Bank & Tr. Co. v. Morari*, 399 P.3d 109, 112-13 (Ariz. Ct. App. 2017) (Arizona community property law applied to guaranty, despite residence in California, based upon choice of law provision in principal obligation that "[t]his Agreement shall be governed by and construed in accordance with the laws of the state of Arizona"); *accord Shanghai Commercial Bank Ltd. v. Kung Da Chang*, 404 P.3d 62, 70 (Wash. 2017) (Hong Kong law applied to community

property in Washington based upon choice of law provision); *see also Am. Nat. Bank v. Medved*, 801 N.W.2d 230, 237 (Neb. 2011) (Nebraska law applied to promissory note despite community property law of Arizona where parties' resided).

Idaho is a community property state.  *See* I.C. § 32-906.  "In Idaho, indebtedness incurred by a spouse during marriage is <u>presumed to be a community obligation</u>."  *In re Warr*, 410 B.R. 891, 896 (Bankr. D. Idaho 2009) (citing *Simplot v. Simplot,* 526 P.2d 844, 851 (Idaho 1974)); *accord* I.C. § 32-912 ("Either the husband or the wife shall have the right to manage and control the community property, and <u>either may bind the community property by contract</u>.").  As such, only one spouse needs to sign a personal guaranty in order to bind the marital community.  *See id.*  Furthermore, torts committed for the benefit of the marital community or through the use of community property implicate the marital community.  *See Hegg v. I.R.S.*, 28 P.3d 1004, 1006 (Idaho 2001) ("Community assets may be reached to satisfy a debt incurred by one spouse's fraud committed during marriage even if the other spouse is completely innocent of the fraud and has no personal liability where the fraud <u>benefits the community or occurs during the spouse's management of the community</u>.").

Here, the agreements expressly apply Idaho law.  As such, the breach of contract and guaranty claims, along with the associated tortious conduct, bind the marital community of Defendant Crews pursuant to Idaho law.  As such, Plaintiff has pled adequate causes of action to warrant a Default Judgment against the marital community of Defendant Crews.

### 4. *Amount of Money at Stake.*

The fourth *Eitel* Factor is "the sum of money at stake in the action."  782 F.2d at 1471. Although "Rule 55 does not limit the amount of money that can be awarded in a default

Memorandum in Support of Motion
for Default Judgment—Page 19

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

judgment, . . . courts are ordinarily reluctant to enter a default judgment when the stakes are high." *Hydentra HLP Int. Ltd. v. Porn69.org*, 2016 WL 3213208, at *1 (D. Ariz. 2016) (noting that although $12,000,000 is "a significant sum of money, . . . courts have entered default judgments for even greater sums"). Nevertheless, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Weese*, 2023 WL 244501, at *6 (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003)).

Here, although Plaintiff is seeking a Default Judgment in excess of $1,000,000, this amount is directly proportional to the harm incurred. As indicated above, the remaining Defendants breached the three Bitcoin Loan Agreements, Defendant Crews breached the Personal Guarantees, and Defendants committed various tortious acts. As a result, Plaintiff was damaged in the amount requested in the Default Judgment. This *Eitel* factor does not preclude the requested Default Judgment.

### 5. *Possibility of Dispute Concerning Material Facts.*

The fifth *Eitel* Factor is "the possibility of a dispute concerning material facts." 782 F.2d at 1471-72. This factor is met when the complaint states valid causes of action, the defaulting defendants were properly served, but fail to respond to the allegations of the complaint, thereby admitting no material facts exist. *See, e.g., Weese*, 2023 WL 244501, at *2 ("Given the allegations of the Complaint . . . and Defendants' default, the Court finds that no genuine dispute of material facts would preclude granting the Motion."). Here, Defendants were properly served, subsequently placed in Default for failing to appear, and as such, have in essence admitted no dispute concerning material facts exists. *See id.*

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

### 6. *Excusable Neglect in Relation to Default.*

The sixth *Eitel* Factor is "whether the default was due to excusable neglect." 782 F.2d at 1472. In this vein, "'[a] defendant's conduct is culpable if he has received <u>actual or constructive notice of the filing of the action and failed to answer</u>.'" *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1072 (C.D. Cal. 2004) (quoting *Meadows v. Dominican Republic,* 817 F.2d 517, 521 (9th Cir.1987)). "The possibility of excusable neglect is remote where the defendant is provided proper notice of the pending suit but does not contact the court or the plaintiff in any manner." *Wells Fargo Bank, N.A. v. Khachatryan,* 2022 WL 2288310, at *4 (C.D. Cal. 2022).

In the situation at hand, Defendants have all been properly served over ten months ago. (ECF Nos. 7-9.) Defendants Crews and Four SquareBiz have been in default since January 26, 2023. (ECF No. 22.) Defendants have been provided notice of all proceedings in this matter (including this Motion for Default Judgment), yet have failed to formally appear and defend. Defendants' respective Defaults are not the result of excusable neglect.

### 7. *Policy Favoring Decisions on the Merits.*

Finally, the seventh *Eitel* Factor is "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." 782 F.2d at 1472. Although policy disfavors default, where a defendant wholly fails to respond to the complaint, a decision on the merits becomes impractical, if not impossible, and "the default mechanism is necessary to deal with <u>wholly unresponsive parties who otherwise could cause the justice system to grind to a halt</u>." *Trident Inv. Partners Inc. v. Evans*, 2021 WL 75826, at *3 (D. Ariz. 2021); *accord Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, at *4 (D. Ariz. 2020) ("<u>Defendants who</u>

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court.").  The mere existence of Rule 55(b) "indicates that this preference [for decisions on the merits], standing alone, is not dispositive."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

In the situation at hand, all of the above analyzed factors override the policy disfavoring default judgments.  *See Yelp Inc.*, 70 F. Supp. 3d at 1100.  Defendants have ignored this litigation and the requested Default Judgment is Plaintiff's only remedy.  *See id*.  On aggregate, the *Eitel* factors warrant entry of the Default Judgment.

**C.  The Principal Loaned Plus Reasonable Interest Are Warranted as Damages.**

After the Court determines that a default judgment is warranted, it must then consider the appropriate remedy for each claim.  In this vein, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  "After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages."  *Yelp Inc.*, 70 F. Supp. 3d at 1100.  Nevertheless, "Courts may rely on declarations submitted by the plaintiff in determining appropriate damages."  *Weese*, 2023 WL 244501, at *6.  Further, a plaintiff's "burden of 'proving up' damages is relatively lenient," as most of the factual and legal predicates entitling a plaintiff to damages are deemed "admitted on default."  *Philip Morris USA, Inc*., 219 F.R.D. at 498.

*1.  Plaintiff's Prayer for Relief and Recoverable Damages.*

Here, the Complaint prays for relief against Defendants in the form of:

1.  Any and all damages, including economic damages and the principal loaned, which will reasonably and fairly compensate Plaintiff;
2.  Attorneys' fees and costs of suit, as allowed by the terms of the Agreements, I.C. § 12-120(3), and other applicable laws;

      3.     Pre-judgment and post-judgment interest at the highest rate permitted by law; and

      4.     Such other and further relief as the Court deems just and equitable.

(ECF No. 1 at 18-19.)

As indicated in the accompanying Declaration of Cody J. Schueler, Plaintiff disbursed: (1) $279,867.55 in Bitcoin on March 27, 2021 pursuant to the first Bitcoin Loan Agreement; (2) $363,000 in Bitcoin on April 26, 2021 pursuant to the second Bitcoin Loan Agreement; and (3) $296,100 in Bitcoin on April 29, 2021 pursuant to the third Bitcoin Loan Agreement. (*See* Schueler Decl. at ¶¶ 5-10.)  Defendants never repaid the principal loaned by Plaintiff. (*See id.*)  As such, Plaintiff is entitled to recovery of at least the $938.967.55 principal loaned, plus pre-judgment interest and attorneys' fees.

### 2. *Pre-Judgment Interest Pursuant to Idaho Law.*

In general, "[p]re-judgment interest in a diversity case is governed by state law." *Weese*, 2023 WL 244501, at *7.  Pursuant to Idaho law, "[w]hen there is <u>no express contract in writing fixing a different rate of interest</u>, interest is allowed at the rate of twelve cents (12¢) on the hundred by the year on . . . [m]oney due by express contract."  I.C. § 28-22-104.  As such, Idaho law does not have a cap on interest in a commercial transaction if there is an "<u>express contract in writing fixing a different rate of interest</u>" above 12% pursuant to I.C. § 28-22-104.  *See F.D.I.C. v. Fox Creek Holding, LLC,* 2010 WL 2667336, at *5 (D. Idaho 2010) ("Idaho does not have a usury law."); *Gro-Mor, Inc. v. Butts*, 712 P.2d 721, 726 (Idaho Ct. App. 1985) ("While the legislature permits parties to contract for pre-judgment interest rates exceeding the legal rate, the legislature limited the amount of interest which attaches to post-judgment debts."); *Carter v. Warde Capital Corp.*, 838 P.2d 327, 329 (Idaho Ct. App.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1992) (noting the "repeal of the usury statute in 1983"); I.C. § 28-42-201(1) ("With respect to a loan, . . . the rate of finance charge shall be that which is agreed upon between the parties to the transaction."). Absent a contractual agreement to the contrary, under I.C, § 28-22-104, "[t]he applicable interest rate is 12%, not compounded." *Edmark Auto, Inc. v. Zurich Am. Ins. Co.*, 2020 WL 127979, at *15 (D. Idaho 2020).

"In Idaho, pre-judgment interest is available only when damages are liquidated or ascertainable by mere mathematical process at the time of the breach." *Bright Harvest Sweet Potato Co., Inc. v. H.J. Heinz Co., L.P.*, 2017 WL 4246777, at *1 (D. Idaho 2017). In this vein, "[t]he essential rationale for awarding prejudgment interest is to ensure that the <u>injured party is fully compensated for its loss</u>." *AgStar Fin. Servs., ACA v. Nw. Sand & Gravel, Inc.*, 483 P.3d 415, 428 (Idaho 2021). Here, Plaintiffs' damages are easily ascertainable by simple mathematical calculations. Although the Bitcoin Loan Agreements call for a higher interest rate, Plaintiff only seeks recovery of the principal loaned plus pre-judgment interest of 12% annually. As such, Plaintiff's damages are as follows:

| Category | Principal | Interest Per Day[3] | Total Interest[4] | Principal Plus Interest |
|---|---|---|---|---|
| First Agreement | $279,867.55 | $92.01 | $79,772.62 | $359,640.17 |
| Second Agreement | $363,000 | $119.34 | $99,887.58 | $462,887.58 |
| <u>Third Agreement</u> | <u>$296,100</u> | <u>$97.34</u> | <u>$81,181.56</u> | <u>$377,281.56</u> |
| **Total** | $938,967.55 | | $260,841.76 | **$1,199,809.31** |

[3] Calculated by multiplying "Principal" by 12% and then dividing by 365 days.
[4] Calculated by multiplying "Interest Per Day" by days outstanding through today (August 11, 2023). This is 867 days for the First Agreement, 837 days for the Second Agreement, and 834 days for the Third Agreement.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

**D.**   **Plaintiff is Entitled to Attorneys' Fees in Obtaining Default Judgment.**

The Bitcoin Loan Agreements provide: "If either Party commences legal proceedings to interpret or enforce the terms of this Agreement, the prevailing Party will be entitled to recover court costs and reasonable attorney fees."  (ECF No. 1 at 24.)  Pursuant to District of Idaho Local Civil Rule 54.2(b), "a party claiming the right to allowance of attorney fees may file and serve a motion for such allowance within fourteen (14) days after entry of judgment." This procedure is applicable for default judgments.  *See, e.g., J & J Sports Prods., Inc. v. Aiken*, 2022 WL 3213094, at *2-3 (D. Idaho 2022).  As Plaintiff is entitled to costs and attorneys' fees in obtaining this Default Judgment, he respectfully requests the ability to submit a Motion under Rule 54.2(b).

**CONCLUSION**

Based upon the foregoing, Plaintiff respectfully requests that the Court grant this Motion for Default Judgment and enter Default Judgment against Defendants Four SquareBix and Crews, jointly and severally, in the amount of $1,199,809.31.

RESPECTFULLY SUBMITTED this 11th day of August, 2023.

ETTER, McMAHON, LAMBERSON,
  VAN WERT & ORESKOVICH, P.C.


By:   /s/ Andrew M. Wagley
  Andrew M. Wagley, ISB #10277
  Samir Dizdarevic-Miller, ISB #11471
  *Attorneys for Plaintiff Cody J. Schueler*

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies, under penalty of perjury of the laws of the United States, that on the date given below, I caused to be served in the manner noted copies of the foregoing document upon the following parties:

Keith Crews
1503 Scenic Overlook Court
Kennesaw, GA 30152

☒ U.S. Mail
☐ Facsimile
☐ E-Mail
☐ Via Hand Delivery

Four SquareBiz, LLC
C/o Registered Agents Inc.
30 North Gould Street, Suite R
Sheridan, WY 82801

☒ U.S. Mail
☐ Facsimile
☐ E-Mail
☐ Via Hand Delivery

EXECUTED this 11th day of August, 2023 in Spokane, Washington.

By: _/s/ Jodi Dineen_____
    Jodi Dineen

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100