UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CODY J. SCHUELER, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>FOUR SQUAREBIZ, LLC, a Wyoming limited liability company, KEITH O. CREWS, an individual and the associated marital community, MICAH EIGLER, an individual and the associated marital community, and JOHN AND JANE DOES 1-10,<br><br>    Defendants. | Case No. 2:22-cv-00389-DCN<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING DEFAULT JUDGMENT** |

## I.  INTRODUCTION

Before the Court is Plaintiff Cody J. Schueler's ("Mr. Schueler") Motion for Default Judgment against Defendants Four SquareBiz, LLC ("Four SquareBiz") and Keith O. Crews, individually and the associated marital community comprised thereof ("Crews").[1]  Dkt. 32.

The Court has reviewed Mr. Schueler's motion, briefing, and attachments.

---

[1] On April 4, 2023, Defendant Micah Eigler ("Defendant Eigler") filed Chapter 7 Bankruptcy, resulting in an automatic stay against Defendant Eigler. Dkt. 28. Because of this bankruptcy, Plaintiff does not seek, and the Court does not award, Default Judgment against Defendant Eigler. However, when setting forth the background facts, the Court refers to Defendant Crews, Defendant Four SquareBiz, and Defendant Eigler collectively as "Defendants," and delineates actions taken by specific Defendants with each Defendant's name.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING DEFAULT JUDGMENT - 1

Defendants Four Squarebiz and Crews have not filed anything in opposition. Considering that Defendants have not yet participated in this case, which has been ongoing since September 2022, the Court sees no reason to wait any longer for a response or to schedule a hearing. It will decide the Motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Based on the argument and briefing presented, the Court makes the following findings of fact and conclusions of law.

## II.  FINDINGS OF FACT

1. This is a commercial lawsuit stemming from the breach of three Bitcoin Loan Agreements executed by Defendants, along with accompanying Personal Guarantees. Dkt. 1. Mr. Schueler filed this lawsuit on September 12, 2022. *Id.*

2. Despite this litigation pending for the better part of a year, Defendants have failed to formally appear, obtain counsel, or demonstrate a meaningful attempt to defend the suit. The Clerk of the Court entered Default against Defendants Four SquareBiz and Crews on January 26, 2023.[2] Dkt. 22.

3. As indicated in the Complaint, Defendants "approached Mr. Schueler in early 2021 regarding the opportunity to invest in the funding and launch of 'Dstem Coin,' a purportedly new decentralized, blockchain cryptocurrency." Dkt. 1, at 4. Mr. Schueler knew Defendants Crews and Eigler "from previous business transactions" and Defendant Crews "purported to be the Chief Executive Officer (CEO) and Chairman of Four

---

[2] The Clerk of the Court entered Default against Defendant Eigler on March 6, 2023, before Defendant Eigler filed Chapter 7 Bankruptcy on April 4, 2023. Dkt. 27; Dkt. 28.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING DEFAULT JUDGMENT - 2

SquareBiz, LLC." *Id*. Defendants presented Mr. Schueler various documents regarding "Dstem Coin," including "PowerPoint presentations," an industry "White Paper," and "a Four SquareBiz 'Co-Venture Equity Agreement' for the funding and launch of Dstem Coin." *Id*.

4. Based on these representations, the parties entered into three "Bitcoin Loan Agreements," whereby Mr. Schueler served as the Lender and Defendants Crews and Four SquareBiz were Borrowers. *See* Dkt. 1-2 at 1–63. In addition, Defendant Crews executed unconditional and absolute Personal Guarantees. *See id*.

5. The first Bitcoin Loan Agreement was executed on March 27, 2021. *See* Dkt. 1, at 4–5. "The express purpose of the first Bitcoin Loan Agreement was for 'Borrower to secure equity funding through Trust Funds Capital, Ltd. and serviced through https://bittrei.io' for the launch and funding of Dstem Coin." *Id*. at 5. "As part of the inducement to enter into the first Bitcoin Loan Agreement, Defendants presented Mr. Schueler with purported documentation from 'Trust Funds Capital,'" which included "a 'Digital Private Equity Funding' loan as part of the Dstem Coin funding process." *Id*. at 5, 31–37.

6. Pursuant to the first Bitcoin Loan Agreement, Mr. Schueler disbursed five Bitcoins to Defendants on March 27, 2021, via the BTC address referenced in the Agreement. At that time, one Bitcoin had a market value of approximately $55,973.51. Defendants never performed under the first Bitcoin Loan Agreement and never repaid Mr. Schueler the $279,867.55 principal loaned.

7. The second Bitcoin Loan Agreement was executed on April 26, 2021. Dkt. 1, at 6. "The express purpose of the second Bitcoin Loan Agreement is 'for the Borrower to pay for the Funds Transfer Clearance Code ('FTCC') to transfer two hundred thirty million dollars ($230,000,000.00)' associated with the funding and launch of Dstem Coin." *Id*. "As part of the inducement to enter into this Agreement, Defendants presented Mr. Schueler with purported documentation from 'Trust Funds Private banking,'" which "requested Mr. Crews 'proceed to pay your Funds Transfer Clearance Code (FTCC) to complete your withdrawal' of $230,000,000 as part of the Dstem Coin funding process." *Id*. at 6, 49.

8. Under the second Bitcoin Loan Agreement, Mr. Schueler disbursed $363,000 in Bitcoin to Defendants on April 26, 2021, via the BTC Wallet address referenced in the Agreement. Defendants never performed under the second Bitcoin Loan Agreement and never repaid Mr. Schueler the $363,000 in principal loaned.

9. The third Bitcoin Loan Agreement was entered into on April 29, 2021. Dkt. 1, at 7. "The express purpose of the third Bitcoin Loan Agreement was for 'the Borrower to pay for HMRC Tax Clearance Pin ('TCP') to pay taxes on the transfer of Borrower's loan fund of two hundred million thirty dollars ($230,000,000.00)' associated with the funding of Dstem Coin." *Id*. at 7–8. "As part of the inducement to enter into this Agreement, Defendants presented Mr. Schueler with purported documentation of a 'FTCC payment request from TrustFunds Private Bank.'" *Id*. at 8.

10. Under the third Bitcoin Loan Agreement, Mr. Schueler disbursed $296,100 in Bitcoin to Defendants on April 29, 2021, via the BTC Wallet address referenced in the

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING DEFAULT JUDGMENT - 4

Agreement. Defendants never performed under the third Bitcoin Loan Agreement and never repaid Mr. Schueler the $296,100 principal loaned.

11.    As stated in the Complaint, the documentation from "Trust Funds Capital," "Trust Funds Private banking," and "TrustFunds Private Bank" Defendants used to induce Mr. Schueler to enter into the three Bitcoin Loan Agreements were "false, fabricated, and fraudulent." Dkt. 1 at 5, 7, 8. The information associated with these purported entities on the loan documents "is invalid, comes back to different entities, or otherwise is not associated with a legitimate financial institution." *Id*. Furthermore, "[n]one of these names are listed with the Office of the Comptroller of the Currency, Federal Deposit Insurance Corporation (FDIC), Federal Reserve National Information Center, or any pertinent Secretary of State business entity searches." *Id.* at 10. The Complaint further alleges that "Dstem Coin is not a legitimate cryptocurrency investment." *Id*. In this vein, Mr. Schueler alleges that "[a]ll of the information and documentation regarding Dstem Coin was created, fabricated, and falsified by Defendants to defraud potential investors." *Id*.

12.    The Complaint alleges that "[p]rior to filing this lawsuit, Mr. Schueler made multiple, good faith attempts to negotiate a resolution of this matter with Defendants and repayment of the funds loaned under the three Bitcoin Loan Agreements." Dkt. 1, at 9. Additionally, "Defendants have continually promised repayment to Mr. Schueler, but have indicated delays associated with other projects." *Id*.

13.    The Complaint prays for relief against Defendants, jointly and severally, in the form of:

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING DEFAULT
JUDGMENT - 5

      a.    Any and all damages, including economic damages and the principal loaned, which will reasonably and fairly compensate [Mr. Schueler];

      b.    Attorneys' fees and costs of suit, as allowed by the terms of the Agreements, I.C. § 12-120(3), and other applicable laws;

      c.    Pre-judgment and post-judgment interest at the highest rate permitted by law; and

      d.    Such other and further relief as the Court deems just and equitable.

Dkt. 1, at 18–19.

14.    Mr. Schueler disbursed: (1) $279,867.55 in Bitcoin on March 27, 2021, under the first Bitcoin Loan Agreement; (2) $363,000 in Bitcoin on April 26, 2021, under the second Bitcoin Loan Agreement; and (3) $296,100 in Bitcoin on April 29, 2021, under the third Bitcoin Loan Agreement. Defendants never repaid the principal loaned by Mr. Schueler.

15.    Mr. Schueler is entitled to recovery of the $938.967.55 principal loaned, plus pre-judgment interest and attorneys' fees. Mr. Schueler's damages are concrete and certain. Although the Bitcoin Loan Agreements call for a higher interest rate, Mr. Schueler only seeks recovery of the principal loaned plus pre-judgment interest of twelve percent (12%) annually. Plaintiff's calculated interest, predicated upon twelve percent simple interest per annum, is $260,841.76.

16.    The Court finds Mr. Schueler is entitled to Default Judgment against Defendants Four SquareBiz and Crews in the aggregate amount of $1,199,809.31.

17.    The Agreements at issue allow the recovery of attorneys' fees and costs by the prevailing party. For the reasons just stated, Mr. Schueler is the prevailing party.

### III.    CONCLUSIONS OF LAW

Based upon the foregoing Findings of Fact, the Court hereby enters the following Conclusions of Law:

1.  Default Judgment is warranted against Defendants Four SquareBiz and Crews based upon the analysis articulated in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), and its progeny.

2.  Pursuant to 28 U.S.C. § 1332, the Court has subject matter jurisdiction over the case. The Court also has personal jurisdiction over the parties, as required to enter this Default Judgment. Defendants Four SquareBiz and Crews were properly served process pursuant to Fed. R. Civ. P. 4. The Court has jurisdiction pursuant to Idaho's long arm statute (I.C. § 5-514), and the forum selection clause in the Agreements, which are consistent with due process under these circumstances.

3.  The three Bitcoin Loan Agreements, along with the accompanying Personal Guarantees, are governed by Idaho law.

4.  Mr. Schueler may proceed against Defendants Four SquareBiz and Crews, despite Defendant Eigler's Chapter 7 Bankruptcy and associated automatic stay.[3] *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993) ("[T]he automatic stay does not extend to actions against parties other than the debtor, such as codebtors and sureties."); *In re Miller*, 262 B.R. 499, 503 (9th Cir. 2001) (explaining automatic stay

---

[3] Pursuant to 11 U.S.C. § 362(a)(1), an automatic stay applies to the "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case." However, § 362(a)(1) applies only to actions against a debtor, and not to actions against non-bankrupt co-defendants. *In re Miller*, 262 B.R. 499, 503 (9th Cir. 2001).

applied to plaintiff's claims against debtor defendant, but did not stay plaintiff's claims against non-bankrupt co-defendant); *Teachers Ins. And Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("It is well-established that stays pursuant to §362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); 3 Collier on Bankruptcy § 362.03[3][d] (15th ed. 2002) ("[A] suit against a codefendant is not automatically stayed by the debtor's bankruptcy filing."). There is no risk of inconsistent results as all Defendants were in Default prior to Defendant Eigler's Chapter 7 Bankruptcy and the Court finds no just reason for delay.

5. When considering a motion for default judgment, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir.1987).

6. The totality of the *Eitel* Factors warrant entry of the requested Default Judgment. In particular, the Court makes the following specific findings and conclusions:

   (a) The first *Eitel* factor is "the possibility of prejudice to the plaintiff." 782 F.2d at 1472. Defendants FourSquare Biz and Crews have failed to participate in this litigation, preventing judicial resolution of the claims. As Mr. Schueler has no apparent legal remedy nor recourse against Defendants Four SquareBiz and Crews outside of this litigation, this factor supports the requested Default Judgment.

   (b) The second and third *Eitel* Factors are "(2) the merits of plaintiff's substantive claim[s]" and "(3) the sufficiency of the complaint." 782 F.2d at 1471. Under this analysis, the well-pleaded allegations of the Complaint are taken as true

and the Court determines whether Mr. Schueler has stated a claim upon which relief may be granted. When sitting in diversity, the Court considers the substantive law of the forum state (Idaho) in determining whether Mr. Schueler has stated a claim. Based upon the Complaint and the Defaults, Mr. Schueler has stated the following claims and causes of action: (i) Breach of Contract; (ii) Breach of Personal Guarantees; (iii) Breach of Good Faith and Fair Dealing; (iv) Conversion; (v) Fraud; and (vi) Civil Conspiracy. In relation to Defendant Crews, Mr. Schueler has pled adequate causes of action to warrant a Default Judgment against the marital community of Defendant Crews.

(c)     The fourth *Eitel* Factor is "the sum of money at stake in the action." 782 F.2d at 1471. Though Mr. Schueler is seeking a Default Judgment in excess of $1,000,000, this amount is directly proportional to the harm incurred. This *Eitel* factor does not preclude the requested Default Judgment.

(d)     The fifth *Eitel* Factor is "the possibility of a dispute concerning material facts." 782 F.2d at 1471-72. Defendants were properly served and subsequently placed in Default for failing to appear. Defendants Four SquareBiz and Crews' decision not to defend themselves suggests that they lack favorable evidence sufficient to raise a material dispute of fact. This factor will not preclude Default Judgment.

(e)     The sixth *Eitel* Factor is "whether the default was due to excusable neglect." 782 F.2d at 1472. Defendants Four SquareBiz and Crews have been in default since January 26, 2023. Defendants Four SquareBiz and Crews have been

provided notice of all proceedings in this matter (including this Motion for Default Judgment) but have failed to formally appear and defend. Defendants Four Square Biz and Crews' respective Defaults are not the result of excusable neglect.

(f) Finally, the seventh *Eitel* Factor is "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." 782 F.2d at 1472. Although policy disfavors default, where a defendant wholly fails to respond to the complaint, a decision on the merits becomes impractical, if not impossible, and the default mechanism is necessary to deal with wholly unresponsive parties who otherwise could cause the justice system to grind to a halt. Defendants Four SquareBiz and Crews have ignored this litigation and the requested Default Judgment is Mr. Schueler's only remedy. In aggregate, the *Eitel* factors warrant entry of the Default Judgment against Defendants Four SquareBiz and Crews.

7. Having determined that a default judgment is warranted, the Court next considers the appropriate remedy for each claim. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

8. Default Judgment in the amount of $1,199,809.31, comprising $938,967.55 in principal and $260,841.76 in reasonable interest, is appropriate and warranted against Defendants Four SquareBiz and Crews.

9. As Mr. Schueler is entitled to costs and attorneys' fees in obtaining this Default Judgment, he may submit a Motion for Attorneys' Fees and Costs under District of Idaho Local Civil Rule 54.2(b) within fourteen days of the entry of judgment.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING DEFAULT JUDGMENT - 10

## IV.   CONCLUSION

Mr. Schueler is entitled to a default judgment. Despite being properly served, Defendants Four SquareBiz and Crews have ignored the claims against them. Default judgment is appropriate under the *Eitel* factors and Mr. Schueler's requested damages, including reasonable interest, are appropriate and warranted. The Court accordingly GRANTS Mr. Schueler's Motion for Default Judgment.

## V.   ORDER

1. The Motion for Default Judgment (Dkt. 32) is **GRANTED**.

2. Pursuant to Fed. R. Civ. P. 55(b)(1), the Clerk of the Court is directed to **ENTER DEFAULT JUDGMENT** in favor of Plaintiff, Cody J. Schueler, and against Defendants Four SquareBiz, LLC and Keith O. Crews (an individual and his associated marital community), jointly and severally, in the amount of $1,199,809.31, comprising $938,967.55 in principal and $260,841.76 in interest.

   a. Interest will accrue on this Default Judgment at the rate of twelve percent (12%) simple interest per annum as of the date of this Judgment.

3. Pursuant to Rule 54.2(b), Mr. Schueler must submit his Motion for Attorneys' Fees and Costs within fourteen (14) days after the entry of Judgment.

DATED: September 5, 2023

_____
David C. Nye
Chief U.S. District Court Judge

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING DEFAULT JUDGMENT - 12